IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
:
**In re:** : Chapter 11
:
**SIMMONS BEDDING COMPANY,** *et al.*, : Case No. 09-14037 (MFW)
:
**Debtors.** : Jointly Administered
:
: Hearing Date: December 10, 2009 at 1:00 p.m.
: Objection Deadline: December 3, 2009 at 4:00 p.m.
---------------------------------------------------------------x

## MOTION OF THE DEBTORS FOR AN ADMINISTRATIVE ORDER ESTABLISHING PROCEDURES FOR INTERIM MONTHLY COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS

Simmons Bedding Company and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] respectfully represent:

### Background

1. On November 16, 2009 (the "Commencement Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The Debtors are authorized to continue operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Simmons Company (6221); Bedding Holdco Incorporated (5929); Simmons Bedding Company (5743); The Simmons Manufacturing Co., LLC (0960); Windsor Bedding Co., LLC (8616); World of Sleep Outlets, LLC (0957); Simmons Contract Sales, LLC (2016); Dreamwell, Ltd. (2419); Simmons Capital Management, LLC (2470); and Simmons Export Co. (1370). Dreamwell, Ltd. and Simmons Capital Management, LLC maintain their respective principal corporate offices at 2215-B Renaissance Drive, Suite 12, Las Vegas, Nevada 89119. Each of the other Debtors maintains its principal corporate office at One Concourse Parkway, Atlanta, Georgia 30328.

## Jurisdiction and Venue

2.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Debtors' Business

3.  The Debtors are one of the world's largest manufacturers and marketers of bedding products. Together with their non-debtor foreign affiliates, the Debtors operate 20 bedding manufacturing facilities across the United States, Canada, and Puerto Rico. Founded in 1870, the Debtors and their predecessors have been developing innovative products and technologies that provide their consumers a better night's sleep since 1876. The Debtors' headquarters are located in Atlanta, Georgia.

4.  The Debtors manufacture, sell and distribute their bedding products to individual end-users through a diverse base of customers which, in 2009, include over 2,100 retailers in the United States with approximately 13,500 store locations, including furniture stores, specialty sleep shops, department stores, furniture rental stores, mass merchandisers and juvenile specialty stores. The Debtors also sell their products to hospitality customers, such as hotels, casinos and resort properties through Simmons Contract Sales, LLC, a debtor herein, and sell overstock and discontinued models through retail outlets operated by World of Sleep Outlets, LLC, a debtor herein. Additionally, the Debtors license their intellectual property through Dreamwell, Ltd., a debtor herein, to both international companies that manufacture and sell Simmons branded bedding products throughout the world and to U.S. manufacturers and distributors of bedding accessories, furniture, airbeds and other products.

5.  As of the Commencement Date, the Debtors had approximately 2,300 employees in the U.S. For the fiscal quarter ended September 26, 2009, the Debtors' unaudited

2

consolidated financial statements reflected assets totaling approximately $900 million, liabilities totaling approximately $1 billion, and net sales for the trailing twelve months ended September 26, 2009 of approximately $782 million.

6. Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 filings are contained in the Declaration of William S. Creekmuir in Support of the Debtors' Chapter 11 Petitions and Request for First Day Relief (the "Creekmuir Declaration") filed on the Commencement Date.

### The Proposed Prepackaged Plan

7. The Debtors' proposed joint prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code (the "Plan") is proposed pursuant to the Plan Sponsor Agreement, dated September 24, 2009 (as has been or may be further amended, restated, supplemented, or otherwise modified from time to time, the "Plan Sponsor Agreement"), among the Debtors and AOT Bedding Super Holdings, LLC and AOT Bedding Intermediate Holdings, LLC (collectively, the "Purchasers"). The Plan Sponsor Agreement contemplates that Bedding Holdco Incorporated ("Bedding Holdco"), Simmons Bedding and its subsidiaries will be acquired by the Purchasers upon consummation of the Plan. The Debtors and the Purchasers entered into the Plan Sponsor Agreement after the Debtors conducted a comprehensive review of various strategic alternatives, which included considering a wholesale restructuring of their capital structure or a third party sale. The Debtors believe the transactions contemplated by the Plan Sponsor Agreement are in the best interests of the Debtors and their creditors.

8. The Debtors have filed a motion seeking approval of the Plan Sponsor Agreement. The Plan Sponsor Agreement includes certain covenants relating to the conduct of the Debtor's business, including, without limitation, a general requirement that the Debtors continue operating in the ordinary course of business. The Debtors' compliance with these

covenants is a condition to the Purchasers' obligations under the Plan Sponsor Agreement, subject to certain qualifications and exceptions. In order to be able to satisfy these covenants if the Plan is approved by the Court, the Debtors intend to operate their business in accordance with the Plan Sponsor Agreement prior to the Court's approval thereof to the extent that such actions are consistent with the Bankruptcy Code and any applicable rules and orders of this Court.

9. Under the Plan, secured creditors, unsecured trade creditors, and administrative and priority creditors are being paid in full or reinstated. Further, under the Plan, the Debtors will reinstate approximately $12.5 million of claims arising in connection with certain industrial revenue bonds and assume obligations aggregating approximately $10 million under certain letters of credit. In addition, holders of the SBC Notes (as defined in the Plan) and the Holdco Notes (as defined in the Plan) are receiving cash recoveries. The Debtors are financing those payments from an equity investment by the Purchasers of approximately $310 million (some portion of which may be funded by certain holders of the Holdco Notes in accordance with the terms of that certain equity commitment letter dated as of September 24, 2009), and the proceeds of the issuance of $425 million senior secured term notes. Certain holders of the SBC Notes, Holdco Notes and SBC Credit Agreement Claims (as defined in the Plan), as well as an affiliate of one of the Purchasers, have committed to purchase such senior secured term notes.

10. On October 13, 2009, the Debtors commenced solicitation of votes on the Plan via a disclosure statement pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. As set forth in the Declaration of James Katchadurian of Epiq Bankruptcy Solutions, LLC certifying Voting on, and Tabulation of, Ballots Accepting and Rejecting the Plan (Docket No.

4

32), the proposed Plan has been accepted in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code by all classes entitled to vote. Specifically, each of the voting classes, both by number and by amount that voted on the Plan, voted overwhelmingly to accept the Plan.

11.  The restructuring contemplated by the proposed Plan will reduce the Debtors' outstanding indebtedness by approximately $572 million. The Debtors believe that the Plan is in the best interests of the Debtors and their creditors.

### Retention of Professionals

12.  The Debtors have also submitted applications contemporaneously herewith to retain Richards, Layton & Finger, P.A., as local-counsel to the Debtors, and have filed or expect to file shortly applications seeking to employ Miller Buckfire & Co., LLC as investment banker and financial advisor to the Debtors; CRG Partners Group LLC, to provide financial advisory services to the Debtors; Deloitte Tax LLP, as tax advisors to the Debtors; PricewaterhouseCoopers LLP, as internal auditors to the Debtors; KPMG, as advisors relating to intellectual property licensing to Dreamwell, Ltd.; and Ropes & Gray, as special intellectual property counsel to the Debtors. In addition, the Debtors have retained Epiq Bankruptcy Solutions, LLC as noticing and claims agent. The Debtors anticipate that, as these cases progress, they may need to retain other professionals in connection with the administration of these cases. In addition, a statutory committee of unsecured creditors (the "Committee") may be appointed in these cases. It is anticipated that the Committee will retain counsel, and possibly other professionals, to assist it in fulfilling its obligations.

### Request for Establishment of Interim
### Compensation and Expense Reimbursement Procedures

13. By this Motion, the Debtors request the entry of an order substantially in the form attached hereto as <u>Exhibit B</u> authorizing and establishing procedures for the compensation and reimbursement of court-approved professionals (each a "<u>Professional</u>" and, collectively, the "<u>Professionals</u>") on a monthly basis, on terms that satisfy the requirements of Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"). Such an order will streamline the professional compensation process and enable the Court and all other parties to monitor more effectively the professional fees incurred in these chapter 11 cases.

14. Specifically, the Debtors propose that, except as otherwise provided in an order of the Court authorizing the retention of a particular Professional, the Professionals be permitted to seek interim payment of compensation and reimbursement of expenses in accordance with the following procedures (collectively, the "<u>Compensation Procedures</u>"):

    (a) On or before the 30th day of each calendar month, or as soon as practicable thereafter (but not earlier than the 15th day of each calendar month), each Professional may file an application (a "Monthly Fee Statement") with the Court for interim approval and allowance of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months and serve a copy of such Monthly Fee Statement by overnight mail on each of the following parties:

        (i) the Debtors, Simmons Bedding Company, One Concourse Parkway, Suite 800, Atlanta, Georgia 30328-5369 (Attn: Kristen K. McGuffey);

        (ii) counsel to the Debtors, Weil, Gotshal & Manges LLP, 700 Louisiana, Suite 1600, Houston, Texas 77002 (Attn: Patrick W. Thompson, Esq.);

        (iii) local counsel to the Debtors, Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Michael J. Merchant, Esq.);

(iv) counsel for the Administrative Agent for certain of the Debtors' prepetition secured lenders, Simpson Thacher & Barlett LLP, 425 Lexington Avenue, New York, NY 10017 (Attn: Peter V. Pantaleo, Esq. and Morris J. Massel, Esq.);

(v) counsel for the Purchasers, Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004 (Attn: Andrew G. Deitderich, Esq.) and Landis Rath & Cobb LLP, 919 North Market Street, Suite 1800, Wilmington, DE 19890 (Attn: Richard S. Cobb, Esq.);

(vi) the Office of the United States Trustee, Suite 2207, J. Caleb Boggs Building, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (Attn: Jane M. Leamy, Esq.); and

(vii) counsel to any statutory committee of creditors when appointed (collectively, the "Notice Parties").

Any Professional that fails to file a Monthly Fee Statement for a particular month or months may subsequently submit a consolidated Monthly Fee Statement for a particular month or months. All Monthly Fee Statements will comply with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), applicable Third Circuit law, and the Local Rules.

(b) Each Notice Party will have until 4:00 p.m. (prevailing Eastern Time) on the 15th day (or the next business day if such day is not a business day) following service of the Monthly Fee Statement (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described in subparagraph (c) below. Upon the expiration of the Objection Deadline, a Professional may file a certificate of no objection (a "CNO") with the Court with respect to the unopposed portion of the fees and expenses requested in its Monthly Fee Statement. After a CNO is filed, the Debtors are authorized and directed to pay the Professional an amount (the "Actual Monthly Payment") equal to the lesser of (i) 80 percent of the fees and 100 percent of the expenses requested in the applicable Monthly Fee Statement (the "Maximum Monthly Payment"), and (ii) 80 percent of the fees and 100 percent of the expenses requested in the applicable Monthly Fee Statement that are not subject to an objection pursuant to subparagraph (c) below.

(c) If any Notice Party wishes to object to a Professional's Monthly Fee Statement, it must (i) file a written objection (an "Objection") with the Court on or before the Objection Deadline, and (ii) serve the Objection on the affected Professional and each of the other Notice Parties so that it is received by each of these parties on or before the Objection Deadline. Thereafter, the objecting party and the affected Professional may attempt to resolve the Objection on a consensual basis. If the parties are unable to

7

|   | reach a resolution of the Objection, the affected Professional may either (i) file a request with the Court for payment of the difference between the Maximum Monthly Payment and the Actual Monthly Payment made to the affected Professional (the "Incremental Amount"), or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Court will consider and dispose of the Objection if requested by the Professional. |
|---|---|
| (d) | Each Professional may submit its first Monthly Fee Statement no earlier than the 15th day of the second full month of the Debtors' cases. This initial Monthly Fee Statement will cover the period from the Commencement Date through the end of the full month preceding the filing date of the Monthly Fee Statement. Thereafter, the Professionals may file Monthly Fee Statements in the manner described above. |
| (e) | At four-month intervals or such other intervals convenient to the Court (the "Interim Fee Period"), each of the Professionals may file with the Court and serve on the Notice Parties a request (an "Interim Fee Application Request") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by such Professional in its Monthly Fee Statements, including any holdbacks, filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code. The Interim Fee Application Request, which will be substantially in the form of Exhibit A attached hereto and incorporated herein by reference, must include a brief description identifying the following: |

|   | (i) | the Monthly Fee Statements that are the subject of the request; |
|---|---|---|
|   | (ii) | the amount of fees and expenses requested; |
|   | (iii) | the amount of fees and expenses paid to date or subject to an Objection; |
|   | (iv) | the deadline for parties other than the Notice Parties to file objections (the "Additional Objections") to the Interim Fee Application Request; and |
|   | (v) | any other information requested by the Court or required by the Local Rules. |

| (f) | The first Interim Fee Period will cover the month in which the Commencement Date occurs and the four full months immediately following such month. Each Professional must file and serve its first Interim Fee Application Request on or before the 45th day following the end of the first Interim Fee Period. Thereafter, each Professional must file and serve subsequent Interim Fee Application Requests on or before the 45th day following the end of the applicable four-month Interim Fee Period. |
|---|---|

8

(g) The Debtors will request that the Court schedule a hearing on the Interim Fee Application Requests at least once every six months or at such other intervals as the Court deems appropriate. If no Objections are pending and no Additional Objections are timely filed, the Court may grant an Interim Fee Application Request without a hearing.

(h) Objections, if any, to the Interim Fee Application Requests shall be filed and served upon the affected Professional and the Notice Parties so as to be received on or before the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application Request.

(i) The pendency of an Objection to payment of compensation or reimbursement of expenses will not disqualify a Professional from the future payment of compensation or reimbursement of expenses under the Compensation Procedures. Any Professional that fails to file a Monthly Fee Statement or an Interim Fee Application Request when due or permitted will be ineligible to receive further interim payments of fees or expenses under the Compensation Procedures until such time as a Monthly Fee Statement or Interim Fee Application Request is submitted by the Professional. There will be no other penalties for failing to file a Monthly Fee Statement or an Interim Fee Application Request in a timely manner.

(j) Neither (i) the payment of or the failure to pay, in whole or in part, monthly interim compensation and reimbursement of expenses under the Compensation Procedures nor (ii) the filing of or failure to file an Objection will bind any party in interest or the Court with respect to the final allowance of applications for compensation and reimbursement of expenses of Professionals. All fees and expenses paid to Professionals under the Compensation Procedures are subject to disgorgement until final allowance by the Court.

15. The Debtors also request that each member of any statutory committee be permitted to submit statements of expenses (excluding third-party counsel expenses of individual committee members) and supporting vouchers to the respective committee's counsel, which counsel will collect and submit the committee members' requests for reimbursement in accordance with the Compensation Procedures. Approval of these Compensation Procedures, however, will not authorize payment of such expenses to the extent that such authorization does not exist under the Bankruptcy Code, the Bankruptcy Rules, applicable Third Circuit law, the Local Rules, or the practices of this Court.

16. In addition, the Debtors request that the Court limit the notice of the Interim Fee Application Requests and the final fee application requests to the Notice Parties. The Debtors further request that all other parties entitled to notice under the Bankruptcy Rules and/or the Local Rules be entitled to receive only the notices of hearing on any interim and final fee application requests. Providing notice of interim and final fee application requests in this manner will permit the parties most active in these chapter 11 cases to review and object to professional fee applications while still affording interested parties of the pendency of fee application requests. Such an approach will save the estates the expense of undue duplication and mailing.

17. The Debtors will identify the amounts paid to each of the Professionals pursuant to the Compensation Procedures in their monthly operating reports.

**Applicable Authority**

18. Section 331 of the Bankruptcy Code provides, in relevant part, as follows:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331. Absent an order of this Court, section 331 limits Professionals rendering services in these chapter 11 cases to payment of fees and expenses only three times per year.

19. In addition, section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

10

20. The Compensation Procedures are similar to procedures previously adopted by courts in this District. *See, e.g., In re SemCrude, LP*, Case No. 08-11525 (BLS) (Bankr. D. Del. July 23, 2008); *In re LandSource Communities Dev. LLC*, Case No. 08-11111 (KJC) (Bankr. D. Del. July 9, 2008); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 12, 2008); *In re Dura Automotive Systems, Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. Nov. 21, 2006); *In re Three A's Holdings, LLC*, Case No. 06-10886 (BLS) (Bankr. D. Del. Sept. 14, 2006); *In re Slater Steel U.S., Inc.*, Case No. 03-11639 (MFW) (Bankr. D. Del. June 23, 2003); *In re Kaiser Aluminum Corp.*, Case No. 02-10429 (JKF) (Bankr. D. Del. Apr. 22, 2002); *In re HQ Holdings, Inc.*, Case No. 02-10760 (MFW) (Bankr. D. Del. Apr. 9, 2002).

21. Moreover, the implementation of the Compensation Procedures is justified in these cases. The Debtors' chapter 11 cases present a number of complex issues that, together with the day-to-day administration of the Debtors' business and these chapter 11 cases, must be addressed by the Debtors' limited staff and resources. In addition, it is anticipated that several Professionals will be involved. Absent streamlined compensation procedures, the professional fee application and review process could be exceptionally burdensome on the Debtors, the Professionals, the Court, and other parties. By contrast, under the Compensation Procedures, the mechanism for payment of Professionals' fees will be simplified and will avoid unnecessary Court involvement. For example, the Compensation Procedures will avoid the need for the Court to review Monthly Fee Statements before payments can be made to Professionals.

22. In sum, the Compensation Procedures will (a) substantially reduce the burden imposed on the Court by avoiding the need for the immediate review of Monthly Fee Statements, (b) enable parties-in-interest to monitor more closely the costs of administering these

cases, (c) diminish undue financial burdens on the Professionals and avoid having Professionals fund the costs of the Debtors' reorganization, and (d) permit the Debtors to better predict and manage their monthly cash needs.

## Notice

23. No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the Office of the United States Trustee for the District of Delaware; (ii) those creditors listed on the Debtors' Consolidated List of Creditors Holding 50 Largest Unsecured Claims; (iii) counsel to Deutsche Bank AG, New York Branch, as administrative agent for the Debtors' prepetition secured lenders and Deutsche Bank Trust Company Americas, as administrative agent and collateral agent for the Debtors' postpetition secured lenders; (iv) counsel to the Purchasers; (v) counsel to the holders of a majority of Simmons Bedding's 7.875% Senior Subordinate Notes due 2014; (vi) counsel to the holders of a majority of Simmons Company's 10% Senior Discount Notes due 2014; (vii) the Debtors' majority equity holder; and (viii) all other parties requesting notice pursuant to Bankruptcy Rule 2002.

## No Previous Request

24. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as <u>Exhibit B</u>, granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: November 20, 2009
       Wilmington, Delaware

Respectfully submitted,

By: /s/ *signature*
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

- and –

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Michael F. Walsh

- and –

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Lydia T. Protopapas

*Proposed Attorneys for the Debtors and Debtors in Possession*