# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re: | : | **Chapter 11** |
|  | : |  |
| **SIMMONS BEDDING COMPANY**, *et al.*, | : | **Case No. 09-14037 (MFW)** |
|  | : |  |
| Debtors. | : | **Jointly Administered** |
|  | : |  |
|  | : | **Hearing Date: December 10, 2009 at 1:00 p.m.** |
|  | : | **Objection Deadline: December 3, 2009 at 4:00 p.m.** |

--------------------------------------------------------------x

## APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a) FOR AUTHORIZATION TO RETAIN AND EMPLOY MILLER BUCKFIRE & CO., LLC AS INVESTMENT BANKER AND FINANCIAL ADVISOR *NUNC PRO TUNC* TO THE COMMENCEMENT DATE

Simmons Bedding Company ("Simmons Bedding") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] respectfully represent:

### Background

1.      On November 16, 2009 (the "Commencement Date"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. The Debtors are authorized to continue operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Simmons Company (6221); Bedding Holdco Incorporated (5929); Simmons Bedding Company (5743); The Simmons Manufacturing Co., LLC (0960); Windsor Bedding Co., LLC (8616); World of Sleep Outlets, LLC (0957); Simmons Contract Sales, LLC (2016); Dreamwell, Ltd. (2419); Simmons Capital Management, LLC (2470); and Simmons Export Co. (1370). Dreamwell, Ltd. and Simmons Capital Management, LLC maintain their respective principal corporate offices at 2215-B Renaissance Drive, Suite 12, Las Vegas, Nevada 89119. Each of the other Debtors maintains its principal corporate office at One Concourse Parkway, Atlanta, Georgia 30328.

## Jurisdiction and Venue

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## The Debtors' Business

3.      The Debtors are one of the world's largest manufacturers and marketers of bedding products. Together with their non-debtor foreign affiliates, the Debtors operate 20 bedding manufacturing facilities across the United States, Canada, and Puerto Rico. Founded in 1870, the Debtors and their predecessors have been developing innovative products and technologies that provide their consumers a better night's sleep since 1876. The Debtors' headquarters are located in Atlanta, Georgia.

4.      The Debtors manufacture, sell and distribute their bedding products to individual end-users through a diverse base of customers which, in 2009, include over 2,100 retailers in the United States with approximately 13,500 store locations, including furniture stores, specialty sleep shops, department stores, furniture rental stores, mass merchandisers and juvenile specialty stores. The Debtors also sell their products to hospitality customers, such as hotels, casinos and resort properties through Simmons Contract Sales, LLC, a debtor herein, and sell overstock and discontinued models through retail outlets operated by World of Sleep Outlets, LLC, a debtor herein. Additionally, the Debtors license their intellectual property through Dreamwell, Ltd., a debtor herein, to both international companies that manufacture and sell Simmons branded bedding products throughout the world and to U.S. manufacturers and distributors of bedding accessories, furniture, airbeds and other products.

5.      As of the Commencement Date, the Debtors had approximately 2,300 employees in the U.S. For the fiscal quarter ended September 26, 2009, the Debtors' unaudited

2

consolidated financial statements reflected assets totaling approximately $900 million, liabilities totaling approximately $1 billion, and net sales for the trailing twelve months ended September 26, 2009 of approximately $782 million.

6.     Additional information regarding the Debtors' business, capital structure, and the circumstances leading to these chapter 11 filings are contained in the Declaration of William S. Creekmuir in Support of the Debtors' Chapter 11 Petitions and Request for First Day Relief (the "Creekmuir Declaration"), filed on the Commencement Date.

## The Proposed Prepackaged Plan

7.     The Debtors' proposed joint prepackaged plan of reorganization under chapter 11 of the Bankruptcy Code (the "Plan") is proposed pursuant to the Plan Sponsor Agreement, dated September 24, 2009 (as has been or may be further amended, restated, supplemented, or otherwise modified from time to time, the "Plan Sponsor Agreement"), among the Debtors and AOT Bedding Super Holdings, LLC and AOT Bedding Intermediate Holdings, LLC (collectively, the "Purchasers"). The Plan Sponsor Agreement contemplates that Bedding Holdco Incorporated ("Bedding Holdco"), Simmons Bedding and its subsidiaries will be acquired by the Purchasers upon consummation of the Plan. The Debtors and the Purchasers entered into the Plan Sponsor Agreement after the Debtors conducted a comprehensive review of various strategic alternatives, which included considering a wholesale restructuring of their capital structure or a third party sale. The Debtors believe the transactions contemplated by the Plan Sponsor Agreement are in the best interests of the Debtors and their creditors.

8.     The Debtors have filed a motion seeking approval of the Plan Sponsor Agreement. The Plan Sponsor Agreement includes certain covenants relating to the conduct of the Debtors' business, including, without limitation, a general requirement that the Debtors continue operating in the ordinary course of business. The Debtors' compliance with this and

other covenants is a condition to the Purchasers' obligations under the Plan Sponsor Agreement, subject to certain qualifications and exceptions. In order to be able to satisfy these covenants if the Plan is approved by the Court, the Debtors intend to operate their business in accordance with the Plan Sponsor Agreement prior to the Court's approval thereof to the extent that such actions are consistent with the Bankruptcy Code and any applicable rules and orders of this Court.

9.     Under the Plan, secured creditors, unsecured trade creditors, and administrative and priority creditors are being paid in full or reinstated. Further, under the Plan, the Debtors will reinstate approximately $12.5 million of claims arising in connection with certain industrial revenue bonds and assume obligations aggregating approximately $10 million under certain letters of credit. In addition, holders of the SBC Notes (as defined in the Plan) and the Holdco Notes (as defined in the Plan) are receiving cash recoveries. The Debtors are financing those payments from an equity investment by the Purchasers of approximately $310 million (some portion of which may be funded by certain holders of the Holdco Notes in accordance with the terms of that certain equity commitment letter dated as of September 24, 2009), and the proceeds of the issuance of $425 million senior secured term notes. Certain holders of the SBC Notes, Holdco Notes and SBC Credit Agreement Claims (as defined in the Plan), as well as an affiliate of one of the Purchasers, have committed to purchase such senior secured term notes.

10.     On October 13, 2009, the Debtors commenced solicitation of votes on the Plan via a disclosure statement pursuant to sections 1125 and 1126(b) of the Bankruptcy Code. As set forth in the Declaration of James Katchadurian of Epiq Bankruptcy Solutions, LLC certifying Voting on, and Tabulation of, Ballots Accepting and Rejecting the Plan (Docket No.

4

32), the proposed Plan has been accepted in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code by all classes entitled to vote. Specifically, each of the voting classes, both by number and by amount that voted on the Plan, voted overwhelmingly to accept the Plan.

11. The restructuring contemplated by the proposed Plan will reduce the Debtors' outstanding indebtedness by approximately $572 million. The Debtors believe that the Plan is in the best interests of the Debtors and their creditors.

## Relief Requested

12. By this application (the "Application"), pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a), the Debtors are seeking to retain Miller Buckfire & Co., LLC ("Miller Buckfire") as their investment banker and financial advisor *nunc pro tunc* to the Commencement Date, in accordance with the terms of the letter agreement, dated as of November 19, 2008 (the "Letter Agreement"), and the amendment to the letter agreement, dated as of August 24, 2009 (the "Amendment" and together with the Letter Agreement, the "Amended Letter Agreement"), copies of which are attached hereto as Exhibit A and Exhibit B, respectively, as modified by the proposed order attached to this Application.[2]

## Basis for Relief Requested

13. Pursuant to section 327(a) of the Bankruptcy Code, a debtor in possession is authorized to engage professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor in possession] in carrying out [its] duties under this title" 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code further provides, "Notwithstanding section 327(a) of this title, a person is not disqualified

---

[2] Capitalized terms used but not defined herein shall have the meanings assigned to them in the Amended Letter Agreement.

for employment under section 327 of the Bankruptcy Code by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). Section 328(a) of the Bankruptcy Code, further clarifies that a debtor in possession may engage professional persons under section 327(a) of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage basis, or on a contingent fee basis." 11 U.S.C. § 328(a). The Debtors submit that reasonable terms and conditions are those employed by Miller Buckfire and other leading investment bankers inside and outside of the bankruptcy context.

14.     As required by Bankruptcy Rule 2014(a), this Application hereinafter sets forth the following: (a) the specific facts showing the necessity for Miller Buckfire's employment, (b) the reasons for the Debtors' selection of Miller Buckfire as their financial advisor in connection with their chapter 11 cases, (c) the professional services to be provided by Miller Buckfire, (d) the arrangement between the Debtors and Miller Buckfire with respect to Miller Buckfire's compensation, and (e) to the best of the Debtors' knowledge, the extent of Miller Buckfire's connections, if any, to certain parties-in-interest in these chapter 11 cases.

### Facts Relevant to the Relief Requested

#### *The Debtors' Retention of Miller Buckfire*

15.     On November 19, 2008, the Debtors and Miller Buckfire executed the Letter Agreement, and Miller Buckfire was retained to provide services aimed at effectuating an overall restructuring of the Debtors' indebtedness. On August 24, 2009, the Debtors and Miller Buckfire executed the Amendment that revised certain provisions of the Letter Agreement regarding the compensation that may be earned by Miller Buckfire. Accordingly, pursuant to the Amended Letter Agreement, Miller Buckfire has provided, and will continue to provide,

6

financial advisory services to the Debtors in connection with a restructuring of the Debtors' liabilities.

16. The following Miller Buckfire professionals have been, and will continue to be, primarily responsible for providing professional services to the Debtors: Ronen A. Bojmel, Managing Director; Timothy Pellegrin, Managing Director; Patrick Dumont, Vice President; Karn Chopra, Associate; Sidharth Sridhar, Associate; and Karam Sethi, Analyst. Additional staff will be provided as needed. The Debtors and various creditors have negotiated the terms of the Amended Letter Agreement which sets forth the services that Miller Buckfire has agreed to provide to the Debtors as well as the manner in which Miller Buckfire has been compensated, and will continue to be compensated, for such services. Miller Buckfire's professionals have spent considerable time providing, and/or will continue to provide, the following services, among others, to the Debtors in connection with their restructuring efforts:

a) familiarized itself with the assets and operations of the Debtors;

b) assisted the Debtors in negotiations for a long-term amendment to its prepetition first lien credit facility subsequent to the covenant violation in the third quarter of 2008;

c) aided the Debtors in the preparation of their five-year business plan including related presentation materials;

d) analyzed the current liquidity and projected cash flows of the Debtors;

e) prepared various analyses with regard to liquidity and debt capacity;

f) examined and sought to implement potential strategic alternatives to address the capital structure issues facing the Debtors;

g) identified potential interested parties to provide either debt or equity capital as part of a new money investment/sale process;

h) prepared the Debtors marketing materials for purposes of running a new money investment/sale process;

i) assisted the Debtors in negotiating confidentiality agreements for parties in interest, gathering and developing due diligence information for such

7

parties, structuring and participating in due diligence meetings and conference calls with parties in interest and their respective advisors;

j) attended and participated in over 25 management and diligence meetings with the Debtors at their headquarters and site visits in conjunction with exploring restructuring alternatives;

k) assisted in negotiations to procure multiple forbearances from the Debtors' first lien lenders and certain noteholders;

l) participated in meetings with the Debtors' board of directors and Special Committee and the various parties in interest regarding both in-court and out-of-court alternatives;

m) assisted the Debtors in discussions/negotiations regarding standalone restructuring alternatives with the Debtors' various creditor constituencies;

n) aided the Debtors in drafting/negotiating the various agreements necessary to launch the pre-packaged bankruptcy process, including: Plan Sponsor Agreement, Restructuring Support Agreement, debt commitment letter, equity commitment letter, Plan and Disclosure Statement;

o) provided financial advice and assistance to the Debtors in structuring and effecting the proposed debtor-in-possession financing;

p) assisted the Debtors and their advisors with developing the process, procedures and documentation for a chapter 11 filing; and

q) render such other financial advisory services as may from time to time be agreed upon by the Debtors and Miller Buckfire.

17. The services that Miller Buckfire will continue to provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that the services will not duplicate the efforts of other professionals retained by the Debtors in these chapter 11 cases. Specifically, (i) Miller Buckfire will provide unique services to the Debtors and (ii) the Debtors will use reasonable efforts to coordinate Miller Buckfire's services with the Debtors' other retained professionals to avoid unnecessary duplication of services.

18. Contemporaneously herewith, the Debtors are applying to this Court to retain CRG Partners Group LLC ("CRG") as the Debtors' financial advisor. To minimize costs, Miller Buckfire has been working with and will continue to work closely with the Debtors, CRG,

and each of the other retained professionals to clearly delineate each professional's respective duties and to prevent unnecessary duplication of services whenever possible. Services provided by CRG include, but are not limited to: preparation of short and medium term cash forecasts; analysis and recommendations regarding the Debtors' overall business plan; and to assist Miller Buckfire, as the Debtors' restructuring advisor, with all matters related to a debt restructuring and financing. While certain issues may involve the services of both Miller Buckfire and CRG, the Debtors believe that the services Miller Buckfire will provide will be complementary to, rather than duplicative of, the services to be performed by CRG. Further, the Debtors are mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure minimal duplication of effort, if any, as a result of Miller Buckfire's role in providing certain financial advisory services.

### *Miller Buckfire's Qualifications*

19.     The Debtors have selected Miller Buckfire as their financial advisors because of the firm's extensive experience and expertise in providing financial advisory and investment banking services to financially distressed companies and debtors under chapter 11 of the Bankruptcy Code. Miller Buckfire's professionals have assisted and advised, and provided strategic advice to, debtors, creditors, bondholders, investors and other entities in reorganization proceedings and complex financial restructurings, both in and out of court.

20.     Miller Buckfire's professionals are providing or have provided financial advisory, investment banking, and other services in connection with the restructuring of: Acterna Corporation; Aerovías Nacionales de Colombia S.A.; Allied Holdings, Inc.; Amtrol Inc.; Anchor Danly Company; Applied Extrusion Technologies, Inc.; AT&T Latin America; Aurora Foods Inc.; Autocam Corporation; Avado Brands, Inc.; Birch Telecom, Inc.; Black Diamond Mining Company, LLC; Bruno's Inc.; Burlington Industries; Calpine Corporation; Cambridge

Industries; Carmike Cinemas; Celotex Corporation; Centerpoint Energy; Citation Corporation; CMS Energy Corporation; Commerceconnect Media Holdings, Inc.; Criimi Mae, Inc.; CTC Communications; Dana Corporation; Delta Air Lines, Inc.; Dow Corning Corporation; Drypers, Inc.; Dura Automotive Systems, Inc.; EaglePicher Holdings Inc.; Exide Technologies; Eurotunnel Group; Favorite Brands International Inc.; FLYi, Inc.; Foamex International; Focal Communications Corporation; FPA Medical Management; Gate Gourmet; General Growth Properties, Inc.; Grand Union Co.; GWLS Holdings, Inc.; Grupo TMM; Hines Horticulture, Inc.; Horizon Natural Resources Company; Huntsman Corporation; ICG Communications; ICO Global Communication, Ltd.; Idearc, Inc.; IMPATH Inc.; Interstate Bakeries Corporation; J.L. French Automotive Castings; Kmart Corporation; Level (3) Communications; Laidlaw, Inc.; Lear Corporation; Lenox Group Inc.; Loewen Group; Magna Entertainment Corp.; McLeodUSA; Meridian Technologies Inc.; Mervyn's LLC; Micro Warehouse; Mirant Corp.; Montgomery Ward & Co.; National Airlines; Oakwood Homes; Pacific Crossing Limited; Pathmark Stores, Inc.; Pegasus Satellite Communications; PennCorp Financial Group, Inc.; Pioneer Companies; PSINet; Polaroid Corporation; Polymer Group, Inc.; Progressive Molded Products Inc.; Questex Media Group, Inc.; The Reader's Digest Association, Inc.; SI Corporation; The Spiegel Group; Stallion Oilfield Services Ltd.; Station Casinos, Inc.; Sunbeam Corporation; Standard Pacific Corp.; Stolt-Nielsen S.A.; Stolt-Offshore S.A.; TECO Energy; Trans World Airlines; U.S. Office Products; Vonage Holdings Corp.; Vulcan, Inc.; and Women First Healthcare, Inc. Miller Buckfire's professionals are also providing or have provided mergers and acquisitions advisory services in connection with whole or partial company sale transactions involving companies across a wide range of industries, including Atwood Mobile Products (Dura Corporation); Aurora Foods; Burlington Industries; Calpine Corporation;

10

Cambridge Industries; Career Blazers; Conversent Communications; Country Road Communications; Dana Corporation; Focal Communications; Global Valley Networks; IMPATH; Pegasus Broadcast Corporation; Pegasus Communications; PSINet; and Polaroid Corporation. Because of Miller Buckfire's extensive restructuring, merger and acquisition, and capital markets expertise, the Debtors believe Miller Buckfire's services will inure to the benefit of the Debtors, their creditors, and all other parties-in-interest in these cases.

21.     The Debtors retained Miller Buckfire to assist them in the evaluation of strategic alternatives and to serve as their financial advisor in connection with their overall restructuring efforts. In the course of its engagement, Miller Buckfire has acquired significant knowledge of the Debtors and their businesses and is now intimately familiar with the Debtors' financial affairs, debt structure, economic interests and positions of key constituents, operations and related matters. Likewise, in providing prepetition services to the Debtors, Miller Buckfire's professionals have worked closely with the Debtors' senior management, financial staff, external stakeholders and other professionals. Accordingly, Miller Buckfire has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and efficient services in these chapter 11 cases. The Debtors believe that Miller Buckfire is both well-qualified and uniquely able to represent them in these chapter 11 cases in an efficient and timely manner.

**Disinterestedness**

22.     Miller Buckfire has informed the Debtors that, except as qualified in the declaration of Ronen A. Bojmel in support of the Application (the "Bojmel Declaration"), Miller Buckfire has no material connection with the Debtors, their creditors, any other party-in-interest, their respective attorneys and accountants, the United States Trustee for the District of Delaware (the "U.S. Trustee"), or any person employed by the office of the U.S. Trustee in the above-

11

captioned chapter 11 cases. The Bojmel Declaration, executed on behalf of Miller Buckfire and pursuant to section 327 of the Bankruptcy Code and Bankruptcy Rule 2014, is filed contemporaneously herewith and attached hereto as Exhibit C.

23.     Based on the Bojmel Declaration, the Debtors believe Miller Buckfire (a) does not hold or represent any interest adverse to the Debtors or their estates, and (b) is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code (as qualified by section 1107(b) of the Bankruptcy Code) and in accordance with section 327(a) of the Bankruptcy Code. The Debtors' knowledge, information, and belief regarding the matters set forth herein are based on, and made in reliance upon, the Bojmel Declaration.

24.     The Debtors believe that the employment of Miller Buckfire is necessary and is in the best interests of the Debtors and their estate.

*Disclosure of Compensation*

25.     The Amended Letter Agreement provides for the following compensation to Miller Buckfire for its financial advisory services (the "Fee Structure")[3].

a)      a monthly financial advisory fee of $250,000 (the "Monthly Advisory Fee"), which shall be payable by the Debtors to Miller Buckfire on the first day of each month during the term of this engagement; provided, that, 50% of all Monthly Advisory Fees actually paid to Miller Buckfire shall be credited against the Fixed Fee (as defined below);

b)      an additional fee equal to $6,500,000 (the "Fixed Fee"), subject to crediting and payable upon the effective date of any chapter 11 plan of reorganization[4].

---

[3] This Application includes a summary of the Fee Structure. To the extent that this summary is inconsistent with the terms of the Amended Letter Agreement, the terms and conditions set forth in the Amended Letter Agreement shall control.

[4] The Amended Letter Agreement provides for a Fixed Fee of $13,000,000, 50% of which was earned and paid prior to the Commencement Date pursuant to the Amended Letter Agreement. Accordingly, $6,500,000 remains to be paid, subject to applicable crediting and approval by the Court.

26. In addition, the Debtors have agreed to reimburse Miller Buckfire on a monthly basis for its reasonable expenses incurred in connection with services rendered pursuant to the Amended Letter Agreement such as travel and other reasonable out-of-pocket expenses (including all reasonable fees, disbursements and other charges of course and all other consultants and advisors retained by Miller Buckfire (with the Debtors' consent)).

27. Prior to the Petition Date, Miller Buckfire received total fees of $9,524,116.67 ($6,500,000.00 of which represented 50% of the Fixed Fee) and $209,551.44 for reimbursement of expenses incurred from October 2008 through the Commencement Date. To the extent Miller Buckfire has received reimbursement of expenses in excess of the amount actually incurred, Miller Buckfire will credit such excess against future incurred expenses. In total, Miller Buckfire received $10,133,718.11 prior to the Commencement Date. The payments received before the Commencement Date are described in more detail below:

| Date | Invoiced Amount | | | Amount Received | | |
|---|---|---|---|---|---|---|
| | Fees | Expenses | Total | Fee | Expenses | Total |
| 10/06/08 | $150,000.00[5] | - | $150,000.00 | $150,000.00 | - | $150,000.00 |
| 11/04/08 | $150,000.00[5] | - | $150,000.00 | $150,000.00 | - | $150,000.00 |
| 11/20/08 | $36,666.67 | - | $36,666.67 | $36,666.67 | - | $36,666.67 |
| 12/01/08 | $250,000.00 | - | $250,000.00 | $250,000.00 | - | $250,000.00 |
| 01/02/09 | $250,000.00 | $13,755.46 | $263,755.46 | $250,000.00 | $13,755.46 | $263,755.46 |
| 02/03/09 | $250,000.00 | $16,737.29 | $266,737.29 | $250,000.00 | $16,737.29 | $266,737.29 |
| 03/03/09 | $250,000.00 | $28,166.37 | $278,166.37 | $250,000.00 | $28,166.37 | $278,166.37 |
| 04/01/09 | $250,000.00 | $28,622.53 | $278,622.53 | $250,000.00 | $28,622.53 | $278,622.53 |
| 05/01/09 | $250,000.00 | $18,183.27 | $268,183.27 | $250,000.00 | $18,183.27 | $268,183.27 |
| 06/01/09 | $250,000.00 | $12,316.23 | $262,316.23 | $250,000.00 | $12,316.23 | $262,316.23 |

---

[5] Amounts paid pursuant to prior engagement by the Debtors.

| Date | Invoiced Amount | | | Amount Received | | |
|---|---|---|---|---|---|---|
| | Fees | Expenses | Total | Fee | Expenses | Total |
| 07/02/09 | $250,000.00 | $13,872.15 | $263,872.15 | $250,000.00 | $13,872.15 | $263,872.15 |
| 08/07/09 | $250,000.00 | $21,912.35 | $271,912.35 | $250,000.00 | $21,912.35 | $271,912.35 |
| 09/01/09 | $250,000.00 | $13,352.95 | $263,352.95 | $250,000.00 | $13,352.95 | $263,352.95 |
| 09/24/09 | $6,500,000.00 | | $6,500,000.00 | $6,500,000.00 | | $6,500,000.00 |
| 10/01/09 | $250,000.00 | $18,301.39 | $268,301.39 | $250,000.00 | $18,301.39 | $268,301.39 |
| 11/02/09 | $337,500.00 | $9,331.45 | $346,831.45 | $337,500.00 | $9,331.45 | $346,831.45 |
| 11/11/09 | - | $15,000.00 | $15,000.00 | - | $15,000.00 | $15,000.00 |
| Total | $9,924,166.67 | $209,551.44 | $10,133,718.11 | $9,924,166.67 | $209,551.44 | $10,133,718.11 |

28.     Miller Buckfire has informed the Debtors, and the Debtors believe that the Fee Structure is consistent with compensation generally charged by investment banking firms of similar stature to Miller Buckfire for comparable engagements, both in and out of bankruptcy. Further, the Debtors believe that the Fee Structure is consistent with Miller Buckfire's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined in the Amended Letter Agreement. Accordingly, both Miller Buckfire and the Debtors believe that the Fee Structure is both reasonable and market-based. In determining the level of compensation to be paid to Miller Buckfire and its reasonableness, the Debtors compared Miller Buckfire's fee proposal to the other proposals received by the Debtors in the investment banking selection process.

29.     Miller Buckfire's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Miller Buckfire's engagement, were important factors in determining the amount of the Fee Structure. The Debtors believe that the ultimate benefit to the Debtors of Miller Buckfire's services cannot be measured merely by reference to

14

the number of hours expended and to be expended by Miller Buckfire's professionals in the performance of such services.

30.     To induce Miller Buckfire to do business with the Debtors in bankruptcy, the Fee Structure was established to reflect the difficulty of the extensive assignments Miller Buckfire was expected to and expects to undertake and the potential for failure.

31.     The Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and its professionals, and in light of the fact that such commitment may foreclose other opportunities for Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

32.     In addition, given the numerous issues which Miller Buckfire has been, and may be, required to address in the performance of its services hereunder, Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature in both out-of-court and chapter 11 contexts, the Debtors believe that the fee arrangements in the Amended Letter Agreement are reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

33.     Similar fee arrangements have been approved and implemented in other large chapter 11 cases in this District and elsewhere. *See, e.g., In re GWLS Holdings, Inc.*, No. 08-12430 (PJW) (Bankr. D. Del. December 5, 2008) (authorizing retention of Miller Buckfire on similar terms); *In re Magna Entertainment Corp.*, No. 09-10720 (MFW) (Bankr. D. Del. March 5, 2009) (same); *In re Hines Horticulture, Inc.*, No. 08-11922 (KJC) (Bankr. D. Del. August 20,

2008) (same); *In re Dura Automotive Systems, Inc.*, No. 06-11202 (KJC) (Bankr. D. Del. October 30, 2006) (same); *In re Oakwood Homes Corp.*, No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (same); *In re Tropicana Entertainment, LLC*, No. 08-10856 (KJC) (Bankr. D. Del. May 5, 2008) (authorizing retention of Lazard Freres & Co. LLC by debtors); *In re Covad Communications Group, Inc.*, No. 01-10167 (JJF) (Bankr. D. Del. Nov. 21, 2001) (authorizing retention of Houlihan Lokey with compensation subject to standard of review set forth in section 328(a)); *In re Harnischfeger Industries, et al.*, No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Blackstone Group L.P. as investment bankers to debtors).

34.     As set forth in the Bojmel Declaration, Miller Buckfire has not shared or agreed to share any of its compensation from the Debtors with any other person, other than principals and employees of Miller Buckfire, as permitted by section 504 of the Bankruptcy Code.

35.     Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases, whose fee arrangements are typically not hours-based, Miller Buckfire does not ordinarily maintain contemporaneous time records in one-tenth hour increments, or provide or conform to a schedule of hourly rates for its professionals. The Debtors therefore request that Miller Buckfire be excused from compliance with such requirements, and that Miller Buckfire be required only to maintain such records in half-hour increments. Notwithstanding the foregoing, Miller Buckfire will seek compensation and reimbursement of out-of-pocket expenses as specified in the Amended Letter Agreement, with the payment of such fees and expenses to be approved in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy

16

Court for the District of Delaware, the fee and expense guidelines established by the U.S. Trustee, and order of this Court.

## Indemnification of Miller Buckfire

36. The Amended Letter Agreement further provides that the Debtors will indemnify, hold harmless and defend Miller Buckfire and its affiliates and its respective directors, officers, members, managers, shareholders, employees, agents and controlling persons and its respective successors and assigns (collectively, the "Indemnified Parties") under certain circumstances (such indemnification obligation being referred to as the "Indemnification Provisions"), which provisions are attached to and made a part of the Amended Letter Agreement. The proposed retention order modifies the Indemnification Provisions to conform to Delaware practice as follows:

a) Subject to the provisions of subparagraphs (c) and (d) below, the Debtors are authorized to indemnify, and shall indemnify, Miller Buckfire, in accordance with the Amended Letter Agreement and to the extent permitted by applicable law, for any claim arising from, related to or in connection with Miller Buckfire's performance of the services described in the Amended Letter Agreement;

b) Miller Buckfire shall not be entitled to indemnification, contribution or reimbursement pursuant to the Amended Letter Agreement for services other than the services provided under the Amended Letter Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

c) Notwithstanding anything to the contrary in the Amended Letter Agreement, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense to the extent that it is (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege the breach of Miller Buckfire's contractual obligations under the Amended Letter Agreement unless the Court determined that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as

17

to the exclusions set forth in clauses (i) and (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Amended Letter Agreement as modified by the proposed retention order;

d)      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Miller Buckfire believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Amended Letter Agreement (as modified by the proposed retention order), including without limitation the advancement of defense costs, Miller Buckfire must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Miller Buckfire; and

e)      The Amended Letter Agreement is amended to delete the proviso to the first sentence of the third paragraph of the Indemnification Provisions.

37.      The Debtors and Miller Buckfire submit that the Indemnification Provisions, as modified by the proposed retention order, are standard provisions, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on indemnification provisions that are customary in Delaware and other jurisdictions.

38.      The Debtors and Miller Buckfire believe that the Indemnification Provisions as modified by the proposed retention order are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 cases. *See, e.g.*, *In re GWLS Holdings, Inc.*, Case No. 08-12430 (PJW) (Bankr. D. Del. December 5, 2008) (authorizing retention of Miller Buckfire on similar terms); *In re Mervyn's Holdings, LLC*, Case No. 08-11586 (KG) (Bankr. D. Del. July 29, 2008) (same); *In re Hines*

18

*Horticulture, Inc.*, Case No. 08-11922 (KJC) (Bankr. D. Del. August 20, 2008) (same); *In re*

*Dura Auto. Sys., Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. October 30, 2006) (same).

        39.    The Indemnification Provisions as modified by the proposed retention

order are similar to other indemnification provisions that have been approved by this Court and

other bankruptcy courts. *See, e.g., In re Tropicana Entm't, LLC*, Case No. 08-10856 (KJC)

(Bankr. D. Del. May 5, 2008) (authorizing indemnification of Lazard Freres & Co. LLC by

debtors); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr. D. Del. Apr.

26, 2007) (same); *In re Comdisco, Inc.*, Case No 02-C-1174 (N.D. Ill. September 23, 2002)

(affirming order authorizing indemnification of Lazard Freres & Co. LLC and Rothschild, Inc.

by debtors and official committee of unsecured creditors); *In re Joan & David Halpern, Inc.*, 248

B.R. 43 (Bankr. S.D.N.Y. 2000) (overruling U.S. Trustee's objection to indemnity provision); *In*

*re United Artists Theatre Co.*, Case No. 00-3514 (SLR) (Bankr. D. Del. Dec. 1, 2000)

(authorizing indemnification of Houlihan, Lokey by debtors).

        40.    The terms and conditions of the Amended Letter Agreement, including the

Indemnification Provisions, were negotiated by the Debtors and Miller Buckfire at arm's length

and in good faith. The Debtors respectfully submit that the Indemnification Provisions contained

in the Amended Retention Letter as modified by the proposed retention order, viewed in

conjunction with the other terms of Miller Buckfire's proposed retention, are reasonable and in

the best interests of the Debtors, its estates and creditors in light of the fact that the Debtors

require Miller Buckfire's services for a successful result in these cases. Accordingly, as part of

this Application, the Debtors request that the Court approve the Indemnification Provisions as

outlined in the Amended Letter Agreement attached hereto as Exhibit C but subject to the

modifications set forth in the proposed retention order.

## Notice

41. No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the Office of the United States Trustee for the District of Delaware; (ii) those creditors listed on the Debtors' Consolidated List of Creditors Holding 50 Largest Unsecured Claims; (iii) counsel to Deutsche Bank AG, New York Branch, as administrative agent for the Debtors' prepetition secured lenders and Deutsche Bank Trust Company Americas, as administrative agent and collateral agent for the Debtors' postpetition secured lenders; (iv) counsel to the Purchasers; (v) counsel to the holders of a majority of Simmons Bedding's 7.875% Senior Subordinate Notes due 2014; (vi) counsel to the holders of a majority of Simmons Company's 10% Senior Discount Notes due 2014; (vii) the Debtors' majority equity holder; (viii) Miller Buckfire; and (ix) all other parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors respectfully submit that no other or further notice need be provided.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit D, (i) authorizing the Debtors to retain and employ Miller Buckfire as set forth herein, and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: November **20** 2009
Atlanta, Georgia

Simmons Bedding Company

By: _____

Name: William S. Creekmuir
Title: Executive Vice President, Chief
Financial Officer, Treasurer &
Assistant Secretary