# EXHIBIT A

**Letter Agreement**

November 19, 2008

Simmons Bedding Company
One Concourse Parkway
Suite 800
Atlanta, GA 30328

Attention:     William S. Creekmuir
               Executive Vice President & Chief Financial Officer

Dear Bill:

This letter agreement confirms the terms under which Simmons Bedding Company (the "SBC") has engaged Miller Buckfire & Co., LLC ("Miller Buckfire") as financial advisor and investment banker to the Company (as defined below) with respect to a possible Restructuring, Financing and/or Sale (each as defined below) and with respect to such other financial matters as to which the Company and Miller Buckfire may agree in writing during the term of this engagement. For purposes hereof, the term "Company" means, collectively, Simmons Holdco, Inc. and its subsidiaries and any entity that Simmons Holdco, Inc. or its subsidiaries may form or invest in to consummate a Restructuring, Financing and/or Sale, and shall also include any successor to or assignee of all or a portion of the assets and/or businesses of the Company whether pursuant to a Plan (as defined below) or otherwise. If appropriate in connection with performing its services for the Company hereunder, Miller Buckfire may utilize the services of one or more of its affiliates, in which case references herein to Miller Buckfire shall include such affiliates.

1.     Miller Buckfire, as financial advisor and investment banker to the Company, will perform the following financial advisory and investment banking services:

   a.     General Financial Advisory and Investment Banking Services.  Miller Buckfire will:

      i.     to the extent it deems necessary, appropriate and feasible, familiarize itself with the business, operations, properties, financial condition and prospects of the Company; and

      ii.     if the Company determines to undertake a Restructuring, Financing and/or Sale advise and assist the Company in structuring and effecting the financial aspects of such a transaction or transactions, subject to the terms and conditions of this agreement.

   b.     Restructuring Services.  If the Company pursues a Restructuring, Miller Buckfire will:

i.     provide financial advice (including valuation advice, if requested) and assistance to the Company in developing and seeking approval of a Restructuring plan (as the same may be modified from time to time, a "Plan"), which may be a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code");

ii.    if requested by the Company, in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under the Plan;

iii.    if requested by the Company, assist the Company and/or participate in negotiations with entities or groups affected by the Plan; and

iv.    if requested by the Company, testify at or otherwise participate in hearings before the bankruptcy court and related proceedings with respect to the matters upon which Miller Buckfire has provided advice, including, as relevant, coordinating with the Company's counsel with respect to testimony in connection therewith.

For purposes of this agreement, the term "Restructuring" shall mean any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement, refinancing, purchase or repurchase and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's preferred equity and/or debt securities and/or other indebtedness, obligations or liabilities (including preferred stock, partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including pursuant to a repurchase or an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorizations, provided that the execution and delivery of the Amendment or any Forbearance Extension (both as defined in subparagraph 2(b)) shall not constitute, in and of itself, a Restructuring for purposes of this definition.

c.    Financing Services. If the Company pursues a Financing, Miller Buckfire will:

i.    provide financial advice and assistance to the Company in structuring and effecting a Financing, identify potential Investors (as defined below) and, at the Company's request, contact such Investors;

ii.    if Miller Buckfire and the Company deem it advisable, assist the Company in developing and preparing a memorandum (with any amendments or supplements thereto, the "Financing Offering

Memorandum") to be used in soliciting potential Investors, it being agreed that (A) the Financing Offering Memorandum shall be based entirely upon information supplied by the Company, (B) the Company shall be solely responsible for the accuracy and completeness of the Financing Offering Memorandum, and (C) other than as contemplated by this subparagraph (c)(ii), the Financing Offering Memorandum shall not be used, reproduced, disseminated, quoted or referred to at any time in any way, except with Miller Buckfire's prior written consent; and

iii. if requested by the Company, assist the Company and/or participate in negotiations with potential Investors.

For purposes of this agreement, the term "Financing" shall mean (i) a private issuance, sale or placement of the equity, equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors except to the extent issued to existing debt or other security holders of the Company in exchange for their existing debt or other securities and except for any such issuances after an "exit financing," (ii) any loan or other financing, including any "debtor in possession financing" or "exit financing," in connection with a case under the Bankruptcy Code or (iii) a rights offering (each such lender or investor, an "Investor").

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by Miller Buckfire to underwrite, place or purchase any financing or securities, which commitment shall only be set forth in a separate underwriting, placement agency or other appropriate agreement relating to the Financing.

d. Sale Services. If the Company pursues a Sale, Miller Buckfire will:

i. provide financial advice and assistance to the Company in connection with a Sale, identify potential acquirors and, at the Company's request, contact such potential acquirors;

ii. at the Company's request, assist the Company in preparing a memorandum (with any amendments or supplements thereto, the "Sale Memorandum") to be used in soliciting potential acquirors, it being agreed that (A) the Sale Memorandum shall be based entirely upon information supplied by the Company, (B) the Company shall be solely responsible for the accuracy and completeness of the Sale Memorandum, and (C) other than as contemplated by this subparagraph (d)(ii), the Sale Memorandum shall not be used, reproduced, disseminated, quoted or referred to at any time in any way, except with Miller Buckfire's prior written consent; and

iii. if requested by the Company, assist the Company and/or participate in negotiations with potential acquirors.

For purposes of this agreement, the term "Sale" shall mean the disposition to one or more third parties in one or a series of related transactions of (x) all or greater than 75% of the equity securities of the Company by the security holders of the Company or (y) all or substantially of the assets (including the assignment of any executory contracts) or businesses of the Company, in either case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction.

In rendering its services to the Company hereunder, Miller Buckfire is not assuming any responsibility for the Company's underlying business decision to pursue or not to pursue any business strategy or to effect or not to effect any Restructuring, Financing, and/or Sale or other transaction. The Company agrees that Miller Buckfire shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction (for the sake of clarity, nothing herein shall be construed to modify or limit Miller Buckfire's obligation to provide valuation advice and testimony). The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

The Company shall make available to Miller Buckfire all information concerning the business, assets, operations, financial condition and prospects of the Company that Miller Buckfire reasonably requests in connection with the services to be performed for the Company hereunder and shall provide Miller Buckfire with reasonable access to the Company's officers, directors, employees, independent accountants and other advisors and agents as Miller Buckfire shall reasonably deem appropriate. The Company represents that all information furnished by it or on its behalf to Miller Buckfire will be accurate and complete in all material respects. The Company recognizes and confirms that in advising the Company and completing its engagement hereunder, Miller Buckfire will be using and relying on publicly available information and on data, material and other information furnished to Miller Buckfire by the Company and other parties. It is understood that in performing under this engagement Miller Buckfire may assume and rely upon the accuracy and completeness of, and is not assuming any responsibility for independent verification of, such publicly available information and the other information so furnished.

2.  Miller Buckfire's compensation for services rendered under this agreement will consist of the following cash fees:

    a.  A monthly financial advisory fee of $250,000 (the "<u>Monthly Advisory Fee</u>"), which shall be due and paid by the Company beginning on the date hereof and thereafter on the first day of each month during the term of this engagement; <u>provided</u> that (i) the fee for November 2008 shall be pro rated for the number of days remaining in such month following the date hereof and (ii) the amount of paid but unearned fees for the month of November 2008 (based on the number of days remaining in November after the date hereof) under that certain engagement letter, dated as of October 2, 2008 (the "<u>Amendment Engagement Letter</u>"), shall be credited against the amount due for November 2008 hereunder; provided, further, that 50% of Monthly Advisory Fees actually paid to Miller Buckfire shall be credited (but only once) against any Restructuring Transaction Fee, Sale Transaction Fee or Financing Fee payable pursuant hereto.

    b.  If the Company enters into an amendment to its existing senior credit facility on or prior to January 31, 2009 that provides covenant and other relief that expires prior to July 1, 2010 (such an amendment obtained on or prior to such date, the "<u>Amendment</u>"), an amendment fee of $1,000,000 (the "<u>Amendment Fee</u>"), which shall be due and paid by the Company upon the execution and delivery thereof; <u>provided</u> that notwithstanding the definition of Restructuring, the execution and delivery of the Amendment shall not constitute, in and of itself, a Restructuring triggering the payment of the Restructuring Transaction Fee; and <u>provided, further</u>, that the Amendment Fee shall be credited (but only once) against any Restructuring Transaction Fee or the Sale Transaction Fee. For the avoidance of doubt, an extension of forbearance for a period ending on or prior to March 31, 2009 by the existing senior lenders (a "Forbearance Extension") shall not be deemed to be the Amendment. For the sake of clarity, this agreement supersedes the Amendment Engagement Letter.

    c.  If at any time during the term of this engagement or within the twelve full months following the termination of this engagement by the Company (including the term of this engagement, the "<u>Fee Period</u>"), (x) any Restructuring is consummated or (y)(1) an agreement in principle, definitive agreement or Plan to effect a Restructuring is entered into and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), such Restructuring is consummated, Miller Buckfire shall be entitled to receive a transaction fee (a "<u>Restructuring Transaction Fee</u>"), contingent upon the consummation of such Restructuring and payable at the closing thereof, equal to $7,000,000.

Notwithstanding anything to the contrary in this agreement, in connection with any Restructuring that is intended to be effected, in whole or in part, as a prepackaged, partial prepackaged or prearranged plan of reorganization anticipated to involve the solicitation of acceptances of such plan in compliance with the Bankruptcy Code, by or on behalf of the Company, from holders of any class of the Company's securities, indebtedness or obligations (a "Prepackaged Plan") the Restructuring Transaction Fee shall be payable (x)(i) in the case of a Prepackaged Plan that takes the form of prepackaged or partial prepackaged plan of reorganization, 50% upon receipt of votes from 50% in number and two-thirds in amount of each class of the Company's creditors or (ii) in the case of a Prepackaged Plan that takes the form of a prearranged plan of reorganization, 50% upon obtaining indications of support from 50% in number and two-thirds in amount of each class the Company's creditors, and (y) the balance shall be payable upon consummation of such Restructuring.

d.  If at any time during the Fee Period, (x) any Sale is consummated or (y)(1) an agreement in principle or definitive agreement to effect a Sale is entered into, and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) such Sale is consummated, Miller Buckfire shall be entitled to receive a transaction fee (a "Sale Transaction Fee"), contingent upon the consummation of such Sale and payable at the closing thereof, which shall be equal to 1.00% of the Aggregate Consideration (as defined below).

For purposes of this agreement, the term "Aggregate Consideration" shall mean the total amount of cash and the fair market value (on the date of payment and as determined by Miller Buckfire and the Company in good faith) of all securities and other property paid or payable, directly or indirectly, by the acquiring party (the "Acquiror") to the acquired party or the seller of the acquired business (in either case, the "Acquired"), or to the Acquired's contract parties, claim holders, security holders and employees, or by the Acquired to the Acquired's contract parties, claim holders, security holders and employees, in connection with a Sale or a transaction related thereto (including, without limitation, the face amount of any indebtedness, securities or other property "credit bid" in any Sale and amounts paid by the Acquiror (i) pursuant to covenants of the sellers not to compete and (ii) to holders of any warrants, stock purchase rights, convertible securities or similar rights of the Acquired and to holders of any options or stock appreciation rights issued by the Acquired, whether or not vested). Aggregate Consideration shall also include the value of any liabilities (including obligations relating to any capitalized leases and the principal amount of any indebtedness for borrowed money, excluding trade payables) (x) existing on the Acquired's balance sheet at the time of a Sale or repaid or retired in anticipation of a Sale (if such Sale takes the form of a merger or sale or exchange of stock) or (y) assumed directly or indirectly by the Acquiror

in connection with a Sale (if such Sale takes the form of a sale or exchange of assets). If a Sale takes the form of a recapitalization of the Company (including, without limitation, an extraordinary dividend, a spin-off, split-off or similar transaction), Aggregate Consideration shall also include the fair market value (on the closing date of the Sale and as determined by Miller Buckfire and the Company in good faith) of (i) the equity securities of the Company retained by the Company's security holders and/or creditors following the consummation of such transaction and (ii) any cash, securities (including securities of subsidiaries) or other consideration received by the Company's security holders and/or creditors in exchange for or in respect of securities of and/or claims against the Company in connection with such transaction (all such cash, securities or and/or claims against other consideration received by such security holders and/or creditors being deemed to have been paid to such security holders and/or creditors in such transaction). In the event that any part of the consideration in connection with any Sale will be payable (whether in one payment or a series of two or more payments) at any time following the consummation thereof, (x) with respect to contingent Sale consideration, any Sale Transaction Fee attributable to such Sale consideration shall be payable at the time such Sale consideration is paid, even if after the expiration of the Fee Period, and (y) with respect to non-contingent Sale consideration, the term Aggregate Consideration shall include the present value of such future payment or payments, as determined by Miller Buckfire and the Company in good faith. As used in this agreement, the terms "payment," "paid" or "payable" shall be deemed to include, as applicable, the issuance or delivery of securities or other property other than cash.

e.   If at any time during the Fee Period, the Company (x) consummates any Financing or (y)(1) the Company receives and accepts written commitments for one or more Financings (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment) and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) such Financing is consummated, the Company will pay to Miller Buckfire the following (either as underwriting discounts, placement fees or other compensation) (each such fee, a "Financing Fee"):

i.   1.00% of the gross proceeds of any indebtedness issued in such Financing that is secured by a first lien;

ii.   3.00% of the gross proceeds of any indebtedness issued in such Financing that (x) is secured by a second or more junior lien, (y) is unsecured and/or (z) is subordinated;

iii.   5.00% of the gross proceeds of any equity or equity-linked securities or obligations issued in such Financing; and

iv.   with respect to any other securities or indebtedness issued in such Financing, such underwriting discounts, placement fees or other compensation as shall be customary under the circumstances and mutually agreed by the Company and Miller Buckfire.

It is understood and agreed that if the proceeds of any such Financing are to be funded in more than one stage, Miller Buckfire shall be entitled to its applicable compensation hereunder upon the closing date of each stage even if one or more of such stages is consummated after the expiration of the Fee Period, so long as one or more of such stages is consummated during the Fee Period.

Notwithstanding anything to the contrary in this agreement, if at any time during the Fee Period, the Company obtains a written commitment for a debtor-in-possession Financing, Miller Buckfire shall be entitled to receive a financing fee of 0.25% of the aggregate amount of such commitment, which fee shall be due and payable at the signing of such commitment (the "DIP Transaction Fee"); provided, however, that 100% of any DIP Transaction Fee actually paid to Miller Buckfire shall be credited (but only once) against any Financing Fee payable pursuant hereto.

Each party hereto acknowledges and agrees that Miller Buckfire's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of Miller Buckfire's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of Miller Buckfire's services hereunder could not be measured merely by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues with Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards. In addition, the Company and Miller Buckfire acknowledge and agree that more than one fee may be payable to Miller Buckfire under subparagraphs 2(b), 2(c), 2(d) and/or 2(e) hereof in connection with any single transaction or a series of transactions, it being understood and agreed that (i) if more than one fee becomes so payable to Miller Buckfire in connection with a single transaction, only the highest of such fees shall be paid to Miller Buckfire, and (ii) if more than one fee becomes so payable to Miller Buckfire in connection with a series of transactions, each such fee shall be paid to Miller Buckfire. Notwithstanding anything to the contrary herein, in no case shall (i) more than one Amendment Fee, more than one

Restructuring Transaction Fee or more than one Sale Transaction Fee be payable to Miller Buckfire hereunder and (ii) both the Sale Transaction Fee and the Restructuring Transaction Fee be payable to Miller Buckfire.

3.  In addition to any fees payable by the Company to Miller Buckfire hereunder, the Company shall, whether or not any transaction contemplated by this agreement shall be proposed or consummated, reimburse Miller Buckfire on a monthly basis for its travel and other reasonable and documented out-of-pocket expenses incurred in connection with, or arising out of Miller Buckfire's activities under or contemplated by this engagement or in the enforcement of Miller Buckfire's rights hereunder (including all reasonable and documented fees, disbursements and other charges of counsel to be retained by Miller Buckfire, and of other consultants and advisors retained by Miller Buckfire with the Company's consent). Such reimbursements shall be made promptly upon submission by Miller Buckfire of statements for such expenses.

4.  The Company agrees to indemnify Miller Buckfire and certain related persons in accordance with the indemnification provisions ("Indemnification Provisions") attached to this agreement. Such Indemnification Provisions are an integral part of this agreement, and the terms thereof are incorporated by reference herein. Such Indemnification Provisions shall survive any termination or completion of Miller Buckfire's engagement hereunder.

5.  The Company agrees that none of Miller Buckfire, its affiliates or their respective directors, officers, members, managers, agents, employees and controlling persons, or any of their respective successors or assigns ("Covered Persons") shall have any liability to the Company or any person asserting claims on behalf of the Company or in the Company's right for or in connection with this engagement or any transactions or conduct in connection therewith except for losses, claims, damages, liabilities or expenses incurred by the Company which are finally judicially determined to have resulted primarily from the gross negligence, bad faith or willful misconduct of such Covered Person.

6.  This agreement and Miller Buckfire's engagement hereunder may be terminated by either the Company or Miller Buckfire at any time, upon prior written notice thereof to the other party; provided, however, that (a) termination of Miller Buckfire's engagement hereunder shall not affect the Company's continuing obligation to indemnify Miller Buckfire and certain related persons as provided for in this agreement, and its continuing obligations and agreements under paragraphs 5 and 7 hereof, (b) notwithstanding any such termination by the Company, Miller Buckfire shall be entitled to the full fees in the amounts and at the times provided for in paragraph 2 hereof and (c) any termination of Miller Buckfire's engagement hereunder shall not affect the Company's obligation to reimburse expenses accruing prior to such termination to the extent provided in paragraph 3 hereof.

7. Miller Buckfire has been retained under this agreement as an independent contractor with no agency relation to the Company or to any other party, it being understood that Miller Buckfire shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Miller Buckfire have the authority to manage money or property of the Company. The advice (oral or written) rendered by Miller Buckfire pursuant to this agreement is intended solely for the benefit and use of the Board of Directors of the Company in considering the matters to which this agreement relates, and the Company agrees that such advice may not be relied upon by any other person or entity, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to Miller Buckfire be made by the Company, without the prior written consent of Miller Buckfire, not to be unreasonably withheld or delayed.

8. The Company agrees that Miller Buckfire may place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder; provided that Miller Buckfire will submit a copy of any such advertisement to the Company for its prior approval, which approval shall not be unreasonably withheld or delayed.

9. This agreement shall be deemed to be made in New York. This agreement and all controversies arising from or relating to performance of this agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. Each of the parties hereby irrevocably consents to personal jurisdiction in the Supreme Court of the State of New York in New York County, Commercial Part, or any Federal court sitting in the Southern District of New York for the purposes of any suit, action or other proceeding arising out of this agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company or Miller Buckfire, hereby waives any objection to venue with respect thereto, and hereby agrees that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions; provided that in the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, during any such case, any such claims may also be heard and determined in the Bankruptcy Court (as defined below). Each of the parties hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to such party at its address set forth above, such service to become effective ten (10) days after such mailing. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT

IN CONNECTION WITH MILLER BUCKFIRE'S ENGAGEMENT IS HEREBY WAIVED.

10. This agreement may be executed in counterparts, each of which together shall be considered a single document. This agreement shall be binding upon Miller Buckfire and the Company and their respective successors and assigns (including, in the case of the Company, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan). This agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto other than the indemnified persons referenced in the Indemnification Provisions contained herein and the Covered Persons referenced above. This agreement (including the Indemnification Provisions) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements (including the Amendment Engagement Letter and understandings relating to the subject matter hereof. If any provision of this agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

11. The Company does not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor is it a prohibited party according to other U.S. government regulatory or enforcement agencies.

12. The Company hereby acknowledges that affiliates of Miller Buckfire engage in the hedge fund and/or principal investment business, which affiliates are separated by ethical walls to prevent the improper sharing of client information. The Company hereby acknowledges and agrees that such affiliates may from time to time have a long or short position in, buy and sell or otherwise effect transactions for their own accounts or for the accounts of investment pools managed by them in the securities, loans or other obligations or instruments of the Company or those of other companies or entities so long as the personnel involved in performing such activities have not received access to the Company's confidential information from Miller Buckfire.

13. In the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, the Company shall apply promptly to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this agreement and Miller Buckfire's retention by the Company under the terms of this agreement, subject only to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review under section 330

of the Bankruptcy Code or any other standard of review, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall supply Miller Buckfire and its counsel with a draft of such application and the proposed order authorizing Miller Buckfire's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable Miller Buckfire and its counsel to review and comment thereon. Miller Buckfire shall have no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Miller Buckfire's retention under the terms of this agreement is approved under Section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to Miller Buckfire in all respects. Miller Buckfire acknowledges that in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this paragraph 12, payment of Miller Buckfire's fees and expenses shall be subject to (i) the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving Miller Buckfire's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications. In the event that the Company becomes a debtor under the Bankruptcy Code and Miller Buckfire's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of Miller Buckfire hereunder as promptly as practicable in accordance with the terms hereof. In so agreeing to seek Miller Buckfire's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that Miller Buckfire's experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its other capabilities will inure to the benefit of the Company, that the value to the Company of Miller Buckfire's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees payable to Miller Buckfire hereunder are reasonable regardless of the number of hours to be expended by Miller Buckfire's professionals in performance of the services to be provided hereunder. Prior to commencing a chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to Miller Buckfire in cash.

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between Miller Buckfire and the Company.

Very truly yours,

MILLER BUCKFIRE & CO., LLC

By: _____

Name: Ronen Bojmel
Title:  Managing Director

Accepted and Agreed to:

SIMMONS BEDDING COMPANY

By: _____

Name:  William S. Creekmuir
Title:    Executive Vice President & Chief Financial Officer

# INDEMNIFICATION PROVISIONS

In connection with the engagement of Miller Buckfire & Co., LLC ("Miller Buckfire") as financial advisor to Simmons Bedding Company, the Company hereby agrees to indemnify and hold harmless Miller Buckfire and its affiliates, their respective directors, officers, members, managers, agents, employees and controlling persons, and each of their respective successors and assigns (collectively, the "indemnified persons"), to the full extent lawful, from and against all losses, claims, damages, liabilities and expenses incurred by them which (A) are related to or arise out of (i) actions or alleged actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company or (ii) actions or alleged actions taken or omitted to be taken by an indemnified person with the Company's consent or in conformity with the Company's actions or omissions or (B) are otherwise related to or arise out of Miller Buckfire's activities under Miller Buckfire's engagement. The Company will not be responsible, however, for any losses, claims, damages, liabilities or expenses pursuant to clause (B) of the preceding sentence which are finally judicially determined to have resulted primarily from the gross negligence, bad faith or willful misconduct of any indemnified person. For purposes of these indemnification provisions, the term the "Company" has the meaning set forth in the engagement letter, dated as of November 19, 2008, between Miller Buckfire and Simmons Bedding Company, of which these indemnification provisions are an integral part.

After receipt by an indemnified person of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify the Company in writing of such complaint or of the commencement of such action or proceeding, but failure so to notify the Company will relieve the Company from any liability which the Company may have hereunder only if, and to the extent that such failure results in the forfeiture by the Company of substantial rights and defenses, and will not in any event relieve the Company from any other obligation or liability that the Company may have to any indemnified person otherwise than under these indemnification provisions. If the Company so elects or is requested by such indemnified person, the Company will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to Miller Buckfire and the payment of the fees and disbursements of such counsel. In the event, however, such indemnified person reasonably determines (after conferring with counsel) in its reasonable judgment that having common counsel would present such counsel with a conflict of interest or if the defendants in, or targets of, any such action or proceeding include both an indemnified person and the Company, and such indemnified person(after conferring with counsel) reasonably concludes that there may be legal defenses available to it or other indemnified persons that are different from or in addition to those available to the Company, or if the Company fails to assume the defense of the action or proceeding or to employ counsel reasonably satisfactory to such indemnified person, in either case in a timely manner, then such indemnified person may employ separate counsel to represent or defend it in any such action or proceeding and the Company will pay the reasonable and documented fees and disbursements of such counsel; provided, however, that the Company will not be required to pay the reasonable and documented fees and disbursements of more than one separate counsel (in addition to local counsel) for all indemnified persons in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which the Company assumes, the indemnified person will have the right to participate in such litigation and to retain its own counsel at such indemnified person's own expense. The Company further agrees that it will not, without the prior written consent of Miller Buckfire, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other indemnified person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of Miller Buckfire and each other indemnified person hereunder from all liability arising out of such claim, action, suit or proceeding. No indemnified person shall settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not the Company is an actual or potential party to such claim, action, suit or proceeding) without the Company's prior written consent, which consent shall not be unreasonably withheld or delayed.

The Company agrees that if any indemnification sought by an indemnified person pursuant to these indemnification provisions is held by a court to be unavailable for any reason other than as specified in the second sentence of the first paragraph of these indemnification provisions, then (whether or not Miller Buckfire is the indemnified person), the Company and Miller Buckfire will contribute to the losses, claims, damages, liabilities and expenses for which such indemnification is held unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, in connection with Miller Buckfire's engagement referred to above, or (ii) if the allocation provided by clause (i) above is not permitted by applicable

law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i), but also the relative fault of the Company, on the one hand, and Miller Buckfire, on the other hand, as well as any other relevant equitable considerations; provided however, that in any event the aggregate contribution of all indemnified persons, including Miller Buckfire, to all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder will not exceed the amount of fees actually received by Miller Buckfire from the Company pursuant to Miller Buckfire's engagement referred to above. It is hereby agreed that for purposes of this paragraph, the relative benefits to the Company, on the one hand, and Miller Buckfire, on the other hand, with respect to Miller Buckfire's engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received by the Company or the Company's stockholders, claims holders or contract parties, as the case may be, pursuant to the transaction, whether or not consummated, for which Miller Buckfire is engaged to render financial advisory services, bears to (ii) the fee paid or proposed to be paid to Miller Buckfire in connection with such engagement. It is agreed that it would not be just and equitable if contribution pursuant to this paragraph were determined by pro rata allocation or by any other method which does not take into account the considerations referred to in this paragraph.

Subject to the third to last sentence of the second paragraph of these indemnification provisions, the Company further agrees that it will promptly reimburse Miller Buckfire and any other indemnified person hereunder for all reasonable and documented expenses (including reasonable and documented fees and disbursements of counsel) as they are incurred by Miller Buckfire or such other indemnified person in connection with investigating, preparing for or defending, or providing evidence in, any pending or threatened action, claim, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Miller Buckfire or any other indemnified person is a party) and in enforcing these indemnification provisions.

The Company's indemnity, contribution, reimbursement and other obligations under these indemnification provisions shall be in addition to any liability that the Company may otherwise have, at common law or otherwise, and shall be binding on the Company's successors and assigns.

Solely for purposes of enforcing these indemnification provisions, the Company hereby consents to personal jurisdiction, service and venue in any court in which any claim or proceeding which is subject to, or which may give rise to a claim for indemnification or contribution under, these indemnification provisions is brought against Miller Buckfire or any other indemnified person.

These indemnification provisions shall apply to the above-mentioned engagement, activities relating to the engagement occurring prior to the date hereof, and any subsequent modification of or amendment to such engagement, and shall remain in full force and effect following the completion or termination of Miller Buckfire's engagement.