# EXHIBIT B

**Amendment**

# FIRST AMENDMENT TO ENGAGEMENT LETTER

This FIRST AMENDMENT TO ENGAGEMENT LETTER is made as of August 24, 2009 (this "First Amendment") between Simmons Bedding Company, a Delaware corporation (the "Company"), and Miller Buckfire & Co., LLC, a Delaware limited liability company (the "Miller Buckfire"). Capitalized terms used herein without definition shall have the meanings ascribed thereto in the Original Letter (defined below).

## RECITALS

WHEREAS, the Company and Miller Buckfire previously entered into an Engagement Letter, dated November 19, 2008 (the "Original Letter"); and

WHEREAS, the Company is contemplating a possible restructuring which, if consummated, would result in payment by the Company to Miller Buckfire of certain fees pursuant to the terms of the Original Letter; and

WHEREAS, the Company and Miller Buckfire now desire to amend the Original Letter, as described below, by entering into this First Amendment, to modify the terms of payment of fees by the Company to Miller Buckfire under the Original Letter.

NOW THEREFORE, in consideration of the mutual representations, warranties and covenants herein contained and in the Original Letter, and intending to be legally bound hereby, the parties hereto agree as follows:

1. Amendment to Section 2 of the Original Letter. Section 2 of the Original Letter is hereby amended and restated in its entirety to read as follows:

> "2. Miller Buckfire's compensation for services rendered under this agreement will consist of the following cash fees:
>
> a. A monthly financial advisory fee of $250,000 (the "Monthly Advisory Fee"), which shall be payable by the Company to Miller Buckfire on the first day of each month during the term of this engagement; provided,th at, 50% of all Monthly Advisory Fees actually paid to Miller Buckfire shall be credited against the Fixed Fee (defined below).
>
> b. An aggregate fee equal to $13,000,000 (the "Fixed Fee") shall be payable by the Company to Miller Buckfire as compensation for any and all Restructuring, Sale or Financing services provided by Miller Buckfire to the Company. The Fixed Fee shall be payable by the Company as follows: (i) $6,500,000 shall be due and payable by the Company upon the earlier to occur of (a) the execution by the Company of an agreement for any person or entity to acquire 50% or

more of the voting securities, or all or substantially all of the assets, of the Company, and (b) the commencement of a bankruptcy case by the Company, it being agreed that any amount payable pursuant to this clause (b) amount shall be paid by the Company to Miller Buckfire immediately preceding the commencement of such bankruptcy case, and (ii) $6,500,000 shall be due and payable by the Company upon the effective date of any chapter 11 plan of reorganization. The Fixed Fee shall be due and paid as described in the foregoing sentence if such events occur at any time during the term of this engagement or within the twelve full months following the termination of this engagement by the Company.

Each party hereto acknowledges and agrees that Miller Buckfire's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of Miller Buckfire's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of Miller Buckfire's services hereunder could not be measured merely by reference to the number of hours to be expended by Miller Buckfire's professionals in the performance of such services. Each party hereto also acknowledges and agrees that the fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Miller Buckfire and that the actual time and commitment required of Miller Buckfire and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm. In addition, given the numerous issues with Miller Buckfire's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Miller Buckfire's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards."

2. <u>Amendment to Section 10 of the Original Letter</u>. The reference to "the Amendment Engagement Letter" in <u>Section 10</u> of the Original Letter is hereby deleted and replaced with the following:

"that certain engagement letter, dated as of October 2, 2008)"

3. <u>Integration with Original Letter</u>. This First Amendment is executed, and shall be considered, as an amendment to the Original Letter and shall form a part thereof, and the provisions of the Original Letter, as amended by this First Amendment, are hereby ratified and confirmed in all respects.

4. **Entire Agreement.** This First Amendment together with the Original Letter contain the entire understanding of the parties hereto with respect to the subject matter contained herein; there are no restrictions, promises, warranties, covenants, or undertakings, other than those expressly provided for herein and therein.

5. **Governing Law.** This First Amendment and all claims or causes of action (whether in contract or tort) that may be based upon, arise out of or relate to this First Amendment or the negotiation, execution or performance of this First Amendment (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this First Amendment or as an inducement to enter into this First Amendment), shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and performed in such State without giving effect to the choice of law principles of such state that would require or permit the application of the laws of another jurisdiction.

6. **Successors and Assigns.** This First Amendment will be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns. Neither this First Amendment nor any right, interest or obligation under this First Amendment may be assigned by any party to this First Amendment without the prior written consent of the other parties hereto and any attempt to do so will be void.

7. **Rules of Construction.** Section headings contained in this First Amendment are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this First Amendment or the intent of any of the provisions hereof. This First Amendment has been negotiated on behalf of the parties with the advice of legal counsel and no general rule of contract construction requiring an agreement to be more stringently construed against the drafter or proponent of any particular provision will be applied in the construction or interpretation of this First Amendment.

8. **Counterparts.** This First Amendment may be executed in one or more counterparts, and will become effective when one or more counterparts have been signed by each of the parties.

[Signature Page Follows]

IN WITNESS WHEREOF, this First Amendment has been duly executed by the parties hereto as of the day and year first above written.

**THE COMPANY:**

SIMMONS BEDDING COMPANY

By: *[signature]*
Name:
Title: **WILLIAM S. CREEKMUIR**
EXECUTIVE VICE PRESIDENT &
CHIEF FINANCIAL OFFICER

**MILLER BUCKFIRE:**

MILLER BUCKFIRE & CO LLC

By: *[signature]*
Name: RONEN BOJMEL
Title: MANAGING DIRECTOR