

FINAL VERSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| SIMMONS BEDDING COMPANY, *et al.*, ) | Case No. 09-14037 (MFW) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| | Docket No. 11 |

FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3),
364(d)(1) AND 364(e) AND FED. R. BANKR. P. 2002, 4001 AND 9014
(I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING,
(II) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, AND
(III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES

Upon the motion, dated November 16, 2009 (the "Motion"), of Simmons Bedding

Company, a Delaware corporation (the "Borrower"), and its affiliated debtors, each as debtor and

debtor in possession (collectively, the "Debtors")[1] in the above-captioned cases (the "Cases")

commenced on November 16, 2009 (the "Petition Date") for interim and final orders under

sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11

of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and

Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the

"Bankruptcy Rules"), and the Local Bankruptcy Rules for the United States Bankruptcy Court

for the District of Delaware (the "Bankruptcy Court"), seeking:

---

[1]     The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal
tax identification number, are: Simmons Company (6221); Bedding Holdco Incorporated (5929);
Simmons Bedding Company (5743); The Simmons Manufacturing Co., LLC (0960); Windsor
Bedding Co., LLC (8616); World of Sleep Outlets, LLC (0957); Simmons Contract Sales, LLC
(2016); Dreamwell, Ltd. (2419); Simmons Capital Management, LLC (2470); and Simmons
Export Co. (1370). Dreamwell, Ltd. and Simmons Capital Management, LLC maintain their
respective principal corporate offices at 2215-B Renaissance Drive, Suite 12, Las Vegas, Nevada
89119. Each of the other Debtors maintains its principal corporate office at One Concourse
Parkway, Atlanta, Georgia 30328.

(I)   authorization (a) for the Borrower to obtain up to $35,000,000 in aggregate principal amount of postpetition financing (the "DIP Financing") on the terms and conditions set forth in this order (the "Final Order") and the Credit and Guaranty Agreement (substantially in the form annexed to the Motion as Exhibit A thereto, and as hereafter amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "DIP Agreement"; [2] together with all agreements, collateral agreements, documents and instruments delivered or executed from time to time in connection therewith, as hereafter amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "DIP Documents"), among the Borrower, Bedding Holdco Incorporated, a Delaware corporation ("Holdings"), the Guarantors (as defined below), Deutsche Bank Trust Company Americas ("DBTCA"), as Administrative Agent and Collateral Agent (in such capacities, the "DIP Agent") for itself and such other financial institutions that may become a party thereto from time to time (collectively, the "DIP Lenders"), and (b) for each of the Debtors, other than the Borrower and Simmons Company (the "Guarantors"; and together with the Borrower, the "DIP Obligors"), to guaranty on a secured basis the Borrower's obligations in respect of the DIP Financing;

(II)   authorization for the DIP Obligors to (a) execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith; and (b)

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the DIP Agreement.

022537-0162-13730-Active.11849661.4

use the proceeds of the DIP Agreement subject to the terms and conditions of the DIP Agreement and this Final Order;

(III)  authorization for the Debtors to (a) use cash collateral (as such term is defined in Section 363 of the Bankruptcy Code, which was approximately $40,000,000 as of the Petition Date (the "Cash Collateral")) pursuant to sections 361, 362 and 363 of the Bankruptcy Code on the terms set forth herein, and all other Prepetition Collateral (as defined in paragraph 3(b) below) on the terms set forth herein and (b) provide adequate protection on the terms set forth herein to the Lender Counterparties (as defined in the Prepetition Credit Agreement referred to below) and the lenders from time to time party to the Prepetition Credit Agreement (the "Prepetition Secured Lenders" and, together with the Lender Counterparties, the "Prepetition Secured Parties") under the Second Amended and Restated Credit and Guaranty Agreement, dated as of May 25, 2006 (as amended, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement"; and, together with any other mortgage, security, pledge, control or guaranty agreements and all other documentation executed in connection with the foregoing, each as amended, supplemented or otherwise modified, the "Prepetition Loan Documents"), among the Borrower, Holdings, certain subsidiaries of the Borrower from time to time party thereto (together with the Borrower and Holdings, the "Prepetition Obligors"), the Prepetition Secured Lenders and Deutsche Bank AG, New York Branch ("DBNY"), as administrative agent for the Prepetition Secured Lenders and as

3

collateral agent for the Prepetition Secured Parties (in such capacities, the "Prepetition Agent");

(IV)    authorization for the DIP Obligors to grant to the DIP Agent (for the benefit of itself and the other DIP Lenders) the DIP Liens as defined and described and subject to the terms and conditions set forth in paragraph 7 below;

(V)    authorization for the DIP Obligors to grant Superpriority Claims (as defined below) in respect of all DIP Obligations (as defined below), subject to the terms and conditions set forth in paragraph 6 below;

(VI)    authorization for the DIP Obligors to grant to the Prepetition Agent (for the benefit of itself and the other Prepetition Secured Parties) the Adequate Protection Liens (as defined below), the 507(b) Claims and other adequate protection set forth herein;

(VII)    authorization for the DIP Obligors to pay all amounts contemplated to be paid under the DIP Documents, including all fees and expenses set forth therein;

(VIII)    authorization for the DIP Agent to accelerate the Loans and terminate the Commitments under the DIP Agreement upon the occurrence and continuance of an Event of Default and the giving of the notice required by this Final Order;

(IX)    authorization to grant liens to the DIP Lenders on the proceeds of the DIP Obligors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code (collectively, the "Avoidance Actions");

(X)     the waiver by the Debtors of any right to seek to surcharge the DIP

Collateral (as defined in paragraph 7 below) pursuant to section 506(c) of the

Bankruptcy Code or any other applicable law or principle of equity;

(XI)    authorization to vacate and modify the automatic stay imposed by

section 362 of the Bankruptcy Code to the extent necessary to implement and

effectuate the terms and provisions of the DIP Documents and this Final Order;

and

(XII)   authorization to waive any applicable stay of the effectiveness of

this Final Order and provide for the immediate effectiveness of this Order.

The hearing on the interim order (the "Interim Order") having been held by this Court on

November 17, 2009 (the "Interim Hearing"), and the hearing on this Final Order having been

held by this Court on December 10, 2009 (the "Final Hearing"), and upon the record made by the

Debtors at the Interim Hearing and the Final Hearing, including, without limitation, the

admission into evidence of the Declaration of William S. Creekmuir in Support of the Debtors'

Chapter 11 Petitions and Request for First Day Relief filed contemporaneously with the Motion

and the other evidence submitted or adduced and the arguments of counsel made at the Interim

Hearing and the Final Hearing and after due deliberation and consideration and sufficient cause

appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction.*  This Court has core jurisdiction over the Cases, this Motion, and the

parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5

2. *Notice.* Notice of the Motion, the relief requested therein, the Interim Hearing, the Interim Order, the Final Hearing and the Final Order were served by the Debtors on their fifty (50) largest (on a consolidated basis) unsecured creditors, the DIP Agent, the Prepetition Agent, AOT Bedding Super Holdings, LLC and AOT Bedding Intermediate Holdings, LLC (the "Plan Sponsors"), counsel to the informal committee of the Borrower's subordinated bondholders, counsel to the informal committee of Simmons Company's senior discount bondholders, the Debtors' majority equity holder, and the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). Under the circumstances, the notice given by the Debtors of the Motion, the relief requested therein and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c), and no further notice of the relief sought at the Interim Hearing is necessary or required.

3. *Debtors' Stipulations.* Subject to the limitations contained in paragraphs 17 and 18 below (except with respect to subparagraph (f) below), the Debtors admit, stipulate and agree that:

(a)     as of the Petition Date, the Prepetition Obligors were truly and justly indebted and liable to the Prepetition Secured Parties, without objection, defense, counterclaim or offset of any kind, (i) in the aggregate principal amount of not less than $529,532,000 in respect of loans made under the Prepetition Credit Agreement, (ii) $7,176,771 in undrawn available amounts under letters of credit issued pursuant to the Prepetition Credit Agreement plus amounts owed under Hedge Agreements with the Lender Counterparties (as each such term is defined in the Prepetition Credit Agreement), accrued and unpaid interest, all other Guaranteed Obligations and Secured Obligations (as each such term is defined in the Prepetition Credit Agreement) and fees and expenses (including fees and expenses of attorneys and advisors) as

provided in the Prepetition Loan Documents and applicable Hedge Agreements (collectively, the "Prepetition Obligations");

(b)     the liens and security interests granted to the Prepetition Agent to secure the Prepetition Obligations (the "Prepetition Liens") are (i) valid, binding, perfected, enforceable liens on and security interests in the personal and real property constituting Collateral under, and as defined in, the Prepetition Loan Documents in respect of the Prepetition Obligations (together with the Cash Collateral, the "Prepetition Collateral"), (ii) not subject to objection, defense, counterclaim, offset, contest, attachment, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) first-priority liens, subject and subordinate only to (A) after giving effect to this Final Order, the Carve Out (as defined in paragraph 6(b) below) and the liens and security interests granted to secure the DIP Financing and the Adequate Protection Obligations (as defined in paragraph 13 below), and (B) valid, perfected and unavoidable liens permitted under the Prepetition Loan Documents to the extent such permitted liens are senior to the liens securing the Prepetition Obligations (collectively, the "Permitted Prepetition Liens");

(c)     the Prepetition Obligations constitute the legal, valid and binding obligations of the Prepetition Obligors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code);

(d)     (i) no portion of the Prepetition Obligations shall be subject to objection, defense, counterclaim, offset, avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (ii) the Prepetition Obligors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses, setoff or recoupment rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law,

7

against the Prepetition Agent, the Prepetition Secured Parties and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors, in each case, as they pertain to the Prepetition Obligations, the Prepetition Collateral or the Prepetition Loan Documents and Hedge Agreements; and

(e)     the aggregate value of the Prepetition Collateral exceeds the aggregate amount of the Prepetition Obligations;

(f)     at the request of the Prepetition Obligors prior to the Petition Date, DBNY agreed to issue letters of credit for the account of the Prepetition Obligors (and such letters of credit were not issued under the Prepetition Credit Agreement) in an aggregate stated amount of $3,100,556, and the Prepetition Obligors cash collateralized such letters of credit at 105% of the face amount thereof (the "L/C Cash Collateral", which term shall include all products, proceeds and investments thereof (including interest accruing thereon)). The L/C Cash Collateral is subject to valid, perfected and unavoidable liens for the benefit of DBNY as issuing lender of the letters of credit and the obligations from time to time owing to DBNY as the issuing lender are not subject to objection, defense, counterclaim, offset, avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

4.     *Findings Regarding the DIP Financing.*

(a)     Good cause has been shown for the entry of this Final Order.

(b)     The Debtors have an immediate need to obtain the DIP Financing and to use the Prepetition Collateral, including the Cash Collateral, to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, and satisfy payroll obligations and other working capital and general corporate purposes of the Debtors. The Debtors' use of the Prepetition Collateral (including the Cash Collateral) is

8

necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the DIP Obligors granting (i) the priming DIP Liens (as defined in paragraph 7 below) and (ii) the Superpriority Claims (as defined in paragraph 6(a) below), in each case on the terms and conditions set forth in this Final Order and the DIP Documents.

(d)     The terms of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Final Order are fair, reasonable, the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The DIP Documents and the use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the DIP Obligors, the DIP Agent, the DIP Lenders, the Prepetition Agent and the informal steering committee of Prepetition Secured Lenders, and all of the DIP Obligors' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, (i) all Loans made to, and all Letters of Credit issued for the account of, the DIP Obligors pursuant to the DIP Agreement and (ii) all other obligations (including, without limitation, indemnification obligations) of the DIP Obligors under the DIP Documents and this Final Order now or hereafter owing to the DIP Agent or any DIP Lender (collectively, the "DIP

Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, in the event that this Final Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(f)     Consummation of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Final Order and the DIP Documents are in the best interest of the Debtors' estates.

(g)     At the request of the Borrower, the Prepetition Agent (in its capacity as Issuing Bank (as defined in the Prepetition Credit Agreement)) issued certain letters of credit in accordance with Section 2.3 of the Prepetition Credit Agreement in favor of the beneficiaries named therein.  National Union Fire Insurance Company of Pittsburgh, Pa., on behalf of itself and the other beneficiaries named therein (collectively, the "L/C Beneficiaries"), now holds four letters of credit, numbered DBS-15573, DBS-15574, DBS-15575, and DBS-18096, respectively (the "Original Letters of Credit").  The Original Letters of Credit were issued for the account of the Borrower (an entity formerly known as "Simmons Company").  Although the Borrower changed its name to Simmons Bedding Company in 2004, the Original Letters of Credit (including any amendments thereto) used and maintained the name of the applicant/account debtor as "Simmons Company."  In connection with the DIP Financing, the Borrower has requested that the L/C Beneficiaries accept a replacement letter of credit to be issued by the Issuing Bank for the account of the Borrower under the DIP Agreement (the "Replacement Letter of Credit") to replace the Original Letters of Credit.  Notwithstanding that the Replacement Letter of Credit references "Simmons Bedding Company" as applicant/account

10

debtor thereunder, and not "Simmons Company," the applicant/account debtor named in the Original Letters of Credit is the same entity as the applicant/account debtor named in the Replacement Letter of Credit.

5.    *Authorization of the DIP Financing and the DIP Documents.*

(a)    The DIP Obligors are hereby authorized to enter into and perform their obligations under the DIP Documents and, in the case of the Borrower, to borrow loans or request issuance of Letters of Credit under the DIP Agreement up to an aggregate principal amount of $35,000,000 for working capital and other general corporate purposes of the Debtors, including without limitation, to pay interest, fees and expenses in connection with the DIP Financing, and for other purposes, in each case, subject to the terms and conditions of the DIP Agreement and this Final Order.

(b)    In furtherance of the foregoing and without further approval of this Court, each DIP Obligor is authorized to perform all acts and to execute and deliver all instruments and documents reasonably required or necessary for the DIP Obligors' performance of their obligations under the DIP Documents, including without limitation:

(i)    the execution, delivery and performance of the DIP Documents, including, without limitation, the performance of the guarantees of the obligations of the Borrower by the Guarantors as provided in the DIP Agreement;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the DIP Obligors and the DIP Agent and, if applicable, the requisite DIP Lenders may agree, and no further approval of this Court shall be required for any non-material amendments, waivers, consents or other modifications to and under the DIP Documents that do

11

not (A) shorten the maturity of the Loans, (B) increase the Commitments or the rate of interest payable on the Loans under the DIP Agreement, or (C) change any Event of Default, add any covenants or amend the covenants therein, in each case as applicable to the DIP Obligors, in any such case to be materially more restrictive; provided, however, that a copy of any such executed amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the U.S. Trustee and the statutory committee of unsecured creditors appointed in the Cases (the "Committee"), if any;

(iii)    the non-refundable payment to the DIP Agent and its affiliates, as the case may be, of the fees set forth in the DIP Documents and any separate fee letter with the DIP Agent or its affiliates, in each case, in accordance with the provisions of the DIP Documents or any such separate fee letter, as applicable; and

(iv)    the performance of all other acts reasonably required under or necessary in connection with the DIP Documents.

(c)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the DIP Obligors party thereto, enforceable against such DIP Obligors in accordance with the terms of this Final Order and the DIP Documents. No obligation, payment, transfer or grant of security under the DIP Documents or this Final Order shall be stayed, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law) or subject to any defense, reduction, setoff, recoupment or counterclaim, subject in all respects to the terms of the DIP Agreement.

(d)     Notwithstanding any other provision of this order or any other order of this court in this case, and notwithstanding that the Replacement Letter of Credit references "Simmons Bedding Company" as applicant/account debtor thereunder, and not "Simmons Company," for good and valuable consideration and for the purpose of adequate protection of the L/C Beneficiaries' existing rights, the L/C Beneficiaries shall have the identical rights to hold, draw upon, use and/or apply the Replacement Letter of Credit (or the proceeds thereof) as it now has to hold, draw upon, use and/or apply the Original Letters of Credit (or the proceeds thereof). Nothing herein shall be deemed to enlarge any duty or diminish any right of the L/C Beneficiaries with respect to any obligation secured by the Original Letters of Credit or that is to be secured by the Replacement Letter of Credit.

6.     *Superpriority Claims.*

(a)     Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "Superpriority Claims") against the DIP Obligors and, except to the extent expressly set forth in this Final Order in respect of the Carve Out, such Superpriority Claims shall have priority over any and all administrative expenses, adequate protection claims and all other claims against the DIP Obligors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Notwithstanding anything herein to the contrary, the Superpriority

022537-0162-13730-Active.11849661.4

Claims shall not be payable from the L/C Cash Collateral or the L/C Cash Collateral Account (as defined below).

(b)     For purposes hereof, the "Carve Out" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, and (ii) after the occurrence and during the continuance of an Event of Default under the DIP Agreement and delivery of notice thereof to each of the counsel for the Debtors and (if any) the Committee (the "Carve Out Notice"), the payment of accrued and unpaid professional fees and expenses incurred by the Debtors and the Committee (if any) and allowed by this Court at any time, in an aggregate amount not exceeding $7 million (plus all unpaid professional fees and expenses of the Debtors and the Committee allowed by this Court at any time that were incurred prior to the delivery of the Carve Out Notice); provided that (A) the Carve Out shall not be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation which seeks any order, judgment, determination or similar relief (x) with respect to claims against the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Secured Parties or invalidating, setting aside, avoiding, recharacterizing or subordinating, in whole or in part, the Prepetition Obligations, the Prepetition Liens, any of the Prepetition Agent's or Prepetition Secured Parties' rights under the Prepetition Loan Documents, the DIP Obligations, the DIP Liens, or any of the DIP Agent's or DIP Lenders' rights under the DIP Documents, or (y) preventing, hindering or delaying the DIP Agent's or the DIP Lenders' assertion or enforcement of the DIP Liens or realization upon any DIP Collateral and, after the Discharge of the DIP Obligations (as defined in paragraph 8(b) below), the Prepetition Agent's or the Prepetition Secured Parties' assertion or enforcement of

14

the Prepetition Liens or realization upon any Prepetition Collateral, (B) prior to the delivery of the Carve Out Notice, the Carve Out shall not be reduced by the payment of fees and expenses allowed by this Court and payable under sections 328, 330 and 331 of the Bankruptcy Code, and (C) nothing in this Final Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates. Notwithstanding anything herein to the contrary, the Carve Out shall not be payable from the L/C Cash Collateral or the L/C Cash Collateral Account.

7.    *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the date of this Final Order and without the necessity of the execution by the DIP Obligors or any other person (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"; provided that, (i) the L/C Cash Collateral Account and the L/C Cash Collateral, (ii) the DIP Obligors' equity interests in excess of 65% of the voting capital stock of their direct foreign subsidiaries and (iii) all other Excluded Assets (as defined in the Pledge and Security Agreement) (any such property described in clauses (i), (ii) and (iii), the "Excluded Property") shall in no event be deemed to be DIP Collateral), subject only to the Carve Out and Permitted Liens (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Final Order and the DIP Documents, the "DIP Liens"):

15

(c)     First Lien On Unencumbered Property.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property in which the DIP Obligors have an interest, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date or valid Liens perfected (but not granted) after the Petition Date to the extent such post-Petition Date perfection is expressly permitted by the Bankruptcy Code (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of Holdings and the proceeds of all of the foregoing; provided that, the Unencumbered Property shall not include the Avoidance Actions and any assets upon which security may not be lawfully granted, but Unencumbered Property shall include any proceeds or property recovered in respect of any Avoidance Actions.

(d)     Liens Junior To Certain Existing Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in all tangible and intangible prepetition and postpetition property in which the DIP Obligors have an interest (other than the property described in paragraph 7(c), as to which the DIP Liens will be as described in such clause), whether now existing or hereafter acquired and all proceeds thereof, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by

16

section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and the DIP Lenders shall be junior to such valid, perfected and unavoidable liens.

(e)     Liens Priming Prepetition Secured Lenders' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all now or hereafter acquired Prepetition Collateral and all proceeds thereof.  The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition Agent and the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens (as defined in paragraph 13(a) below)), but shall be junior to any valid, perfected and unavoidable security interests in and liens on the Prepetition Collateral that were valid and senior to the liens of the Prepetition Agent and the Prepetition Secured Parties as of the Petition Date, including as permitted by section 546(b) of the Bankruptcy Code.

(f)     Liens Senior To Certain Other Liens.  Except as otherwise permitted under the DIP Documents, the DIP Liens and the Adequate Protection Liens  shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the DIP Obligors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

8.     *Remedies After Event of Default.*

(a)     The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence and during the continuance of an Event of Default and the

17

delivery of notice of the occurrence of an Event of Default as and to the extent required by the DIP Agreement, all rights and remedies under the DIP Documents, other than those rights and remedies against the DIP Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default, and the giving of five (5) Business Days' prior written notice to the Debtors (with a copy to counsel for the Debtors, counsel to the Committee (if any) and to the U.S. Trustee), all rights and remedies against the DIP Collateral provided for in the DIP Documents and this Final Order (including, without limitation, the right to setoff monies of the DIP Obligors in accounts maintained with the DIP Agent or any DIP Lender and the right to prohibit further use of Cash Collateral). Following the giving of written notice by the DIP Agent of the occurrence and continuance of an Event of Default, the Debtors shall be entitled to an emergency hearing before the Bankruptcy Court upon prior notice to the DIP Agent and its counsel. In any such hearing, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing. In no event shall the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral. The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Final Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.

(b)     The Prepetition Secured Parties may not exercise any rights or remedies under the Prepetition Loan Documents or this Final Order unless and until all DIP Obligations have been paid in full in cash, all letters of credit have been cash collateralized, backstopped or

18

returned undrawn, in each case, in accordance with the terms of the DIP Agreement and all commitments thereunder have been terminated (collectively, "Discharge of the DIP Obligations"). After the Discharge of the DIP Obligations, the Prepetition Secured Parties may prohibit further use of Cash Collateral and/or exercise such rights or remedies as provided herein, in each case, to the extent the Prepetition Obligors are in default of their Adequate Protection Obligations or other obligations hereunder. If, prior to the Discharge of the DIP Obligations, the Prepetition Secured Parties receive any DIP Collateral or proceeds thereof, the DIP Agent and the DIP Lenders shall have the right to seek to recover any such DIP Collateral or proceeds.

9.      *Limitation On Charging Expenses Against Collateral.* Except to the extent of the Carve Out with respect to the DIP Collateral and the Prepetition Collateral, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral, the Prepetition Collateral or the L/C Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law or in equity, without the prior written consent of the DIP Agent or the Prepetition Agent, as the case may be, and no such consent shall be implied from any other action or inaction by the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders.

10.      *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders or the Prepetition Agent on behalf of the Prepetition Secured Lenders pursuant to the provisions of this Final Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, except as expressly provided in the DIP Agreement.

19

11.    *The Cash Collateral.*  The L/C Cash Collateral deposited and maintained in the

L/C Cash Collateral Account (as defined below) shall not constitute and shall not be included in

the term "Cash Collateral" as used herein.  Notwithstanding anything herein to the contrary,

neither the Debtors nor any other estate representatives (including, without limitation, the

Committee (if any) or any trustee) shall use or be permitted to use any of the L/C Cash Collateral

deposited or maintained from time to time in the letter of credit cash collateral account (the "L/C

Cash Collateral Account"), including, without limitation, for purposes of the Carve Out.

12.    *Use Of Prepetition Collateral (including Cash Collateral).*  The Debtors are

hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the

period from the Petition Date through and including the Termination Date under the DIP

Agreement for working capital and general corporate purposes in accordance with the terms and

conditions of this Final Order and the DIP Agreement; provided that the Prepetition Secured

Lenders are granted adequate protection as hereinafter set forth.

13.    *Adequate Protection.*  The Prepetition Agent and the Prepetition Secured Parties

are entitled, pursuant to sections 361, 363(c)(2) and 364(d)(1) of the Bankruptcy Code, to

adequate protection of their interests in the Prepetition Collateral and the use of Cash Collateral,

in an amount equal to the aggregate diminution in value of the Prepetition Collateral, including

without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or

other decline in value) of any Prepetition Collateral, including the Cash Collateral, the priming of

the Prepetition Agent's liens on the Prepetition Collateral by the DIP Liens, and the imposition

of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value,

the "Adequate Protection Obligations").  As adequate protection, the Prepetition Agent and the

Prepetition Secured Parties are hereby granted the following:

20

(a)    Adequate Protection Liens.  As security for the payment of the Adequate Protection Obligations, the Prepetition Agent (for itself and for the benefit of the Prepetition Secured Parties) is hereby granted (effective and perfected upon the date of this Final Order and without the necessity of the execution by the DIP Obligors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the Permitted Prepetition Liens, (ii) the DIP Liens, (iii) the Carve Out and (iv) Permitted Liens.

(b)    Section 507(b) Claim.  The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331, 503(b), 506(c), 507(a), 726, 1113 and 1114 of the Bankruptcy Code, subject and subordinate only to (i) the Carve Out and (ii) the Superpriority Claims granted in respect of the DIP Obligations.  Except to the extent expressly set forth in this Final Order, the Prepetition Agent and the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the Discharge of the DIP Obligations.  Notwithstanding anything herein to the contrary, the 507(b) Claims shall not be payable from the L/C Cash Collateral.

(c)    Payments.  The Prepetition Obligors are authorized and directed to pay to the Prepetition Agent:  (i) within five (5) Business Days of entry of this Final Order, all accrued and unpaid pre-petition interest, fees and costs (including, without limitation, interest on loans, interest on terminated Hedge Agreements (to the extent provided therein), breakage costs, fees

21

for letters of credit, commitment fees, and accrued fees owing to the Prepetition Agent), in each case, calculated based on the applicable non-default rate set forth in the Prepetition Credit Agreement or the other applicable Prepetition Loan Documents or the applicable rate set forth in Hedge Agreements with respect to obligations owing thereunder; (ii) on the last Business Day of each calendar month after the entry of this Final Order, all accrued and unpaid post-petition interest, fees and costs (including, without limitation, interest on loans, interest on terminated Hedge Agreements (to the extent provided therein), breakage costs, fees for letters of credit, commitment fees, and accrued fees owing to the Prepetition Agent), in each case, calculated based on the applicable non-default rate set forth in the Prepetition Credit Agreement or the other applicable Prepetition Loan Documents or Hedge Agreements (to the extent provided therein); (iii) all regularly scheduled payments in respect of the Hedge Agreements on the date such payments become due in accordance with the terms thereof, provided that a termination payment in respect of any Hedge Agreement shall not be deemed to be an administrative claim under section 503(b) of the Bankruptcy Code; (iv) all scheduled amortization payments on the Tranche D Term Loan (as defined in the Prepetition Credit Agreement) on the date such payments become due in accordance with the Prepetition Credit Agreement (determined without giving effect to the acceleration of the Obligations) and (v) after the Discharge of the DIP Obligations, all mandatory prepayments arising under Section 2.13 of the Prepetition Credit Agreement (it being understood that solely for purposes of Section 2.13(c) of the Prepetition Credit Agreement the incurrence of the DIP Obligations shall be deemed to be permitted by Section 6.1 of the Prepetition Credit Agreement); provided that for purposes of Section 2.13(a) of the Prepetition Credit Agreement, the Prepetition Obligors shall not be required to make a mandatory prepayment if the Net Asset Sale Proceeds (as defined in the Prepetition Credit

22

Agreement) of any Asset Sale (as defined in the Prepetition Credit Agreement) are less than $3 million or such a sale is a permitted sale to an affiliate or subsidiary of the applicable Prepetition Obligor under the Prepetition Credit Agreement; provided further that this clause (v) shall be without prejudice to the rights of the Prepetition Secured Parties under applicable law.

(d)  Fees and Expenses.  The Prepetition Agent shall receive from the Prepetition Obligors reimbursement of all reasonable fees and expenses incurred or accrued by the Prepetition Agent under the Prepetition Loan Documents, including without limitation, the reasonable fees and disbursements of advisors and a counsel (and a local counsel) for the Prepetition Agent (including the reasonable out-of-pocket expenses of the Prepetition Agent) and reasonable out-of-pocket expenses (other than counsel fees) of the members of the steering committee shall be paid by the Prepetition Obligors.  None of the fees and expenses payable pursuant to this paragraph 13(d) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  The Debtors shall pay the fees and expenses provided for in this paragraph 13(d) promptly (but no later than ten (10) Business Days) after reasonably detailed invoices (consistent with prepetition practice, including redacted for work product and privilege) for such fees and expenses shall have been submitted to the Debtors, and the Debtors shall promptly provide copies of such invoices to the Committee (if any) and the U.S. Trustee.  Nothing herein shall be deemed to modify the Prepetition Credit Agreement or the Prepetition Obligors' obligations thereunder.

(e)  Information.  The DIP Obligors shall promptly provide to the Prepetition Agent any written financial information or periodic reporting that is provided to, or required to

23

be provided to, the DIP Agent or the DIP Lenders, and after the Discharge of the DIP Obligations, the Prepetition Obligors shall comply with the reporting obligations set forth in paragraph 14(b) below.

(f)    Application of Proceeds.  So long as the Discharge of the DIP Obligations has not occurred, all proceeds of any Prepetition Collateral pursuant to the enforcement of any of the Prepetition Loan Documents or the exercise of any remedial provision thereunder or under the Interim Order or this Final Order, together with all other proceeds received by any Prepetition Secured Party as a result of any such enforcement or the exercise of any such remedial provision or as a result of any distribution of or in respect of any Prepetition Collateral (whether or not expressly characterized as such), or the application of any Prepetition Collateral (or proceeds thereof) to the payment thereof or any distribution of Prepetition Collateral (or proceeds thereof) upon the liquidation or dissolution of any DIP Obligor, shall be applied against the DIP Obligations until the Discharge of the DIP Obligations has occurred.  Upon the Discharge of the DIP Obligations, the DIP Agent shall deliver to the Prepetition Agent any proceeds of Prepetition Collateral held by it in the same form as received, with any necessary endorsements or as a court of competent jurisdiction may otherwise direct, to be applied by the Prepetition Secured Lenders in such order as specified in the Prepetition Loan Documents.

(g)    Cash Collateralized Letters of Credit.  DBNY, as the issuing lender of the letters of credit that are collateralized by the L/C Cash Collateral, shall be authorized to immediately, and without further notice or action, debit amounts from the L/C Cash Collateral to: (i) pay all accrued and unpaid fees with respect to such letters of credit and (ii) reimburse itself for each drawing under such letter of credit.

14.    *Reservation of Rights of Prepetition Secured Parties.*

24

(a)     Based upon the consent of the Prepetition Secured Parties, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Agent and the Prepetition Secured Parties. Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Agent and the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Agent to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification. Except as expressly provided herein, nothing contained in this Final Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Agent or any Prepetition Secured Party. The consent of the Prepetition Agent and the Prepetition Secured Parties to the priming of the Prepetition Agent's liens on the Prepetition Collateral by the DIP Liens (a) is limited to the DIP Financing and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Agent or the Prepetition Secured Parties that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Final Order.

(b)     In the event of the Discharge of the DIP Obligations, the Prepetition Obligors will continue to be bound by Section 6.6 and Article V of the DIP Agreement (as in effect immediately prior to its termination), which will thereafter be for the benefit of the Prepetition Secured Lenders so long as the Debtors are permitted to use the Cash Collateral.

15.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     The DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders are hereby authorized, but not required, to file or record financing

25

statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent or the Prepetition Agent shall, in their respective sole discretion, choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Final Order.

(b)     A certified copy of this Final Order may, in the discretion of the DIP Agent or the Prepetition Agent, as the case may be, (a) be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Final Order for filing and recording or (b) be delivered to any depositary bank or brokerage or securities firm as evidence of the DIP Agent's control over the DIP Collateral (without the need to enter into any deposit account control agreement or securities account control agreement with respect thereto); provided that the DIP Obligors shall enter into deposit account control agreements or securities account control agreements, as applicable, with the DIP Agent in accordance with the terms of the DIP Agreement.

(c)     The DIP Obligors shall execute and deliver to the DIP Agent and the Prepetition Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.

26

(d)     Any provision of any lease or other license, contract or other agreement
that requires (i) the consent or approval of one or more landlords or other parties or (ii) the
payment of any fees or obligations to any governmental entity, in order for any DIP Obligor to
pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds
thereof, or other DIP Collateral related thereto, is hereby deemed to be inconsistent with the
applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect
with respect to the granting of DIP Liens or Adequate Protection Liens on such leasehold interest
or the proceeds of any assignment and/or sale thereof by any DIP Obligor in favor of the DIP
Lenders or the Prepetition Secured Lenders in accordance with the terms of the DIP Documents
or this Final Order.

16.     *Preservation of Rights Granted Under the Final Order.*

(a)     Except as otherwise provided in the DIP Documents, no claim or lien
having a priority senior to or *pari passu* with those granted by this Final Order to the DIP Agent,
the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders shall be granted or
allowed and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to
any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates
under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other
lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     It shall constitute an Event of Default under the DIP Agreement if there is
entered, (i) any modification of this Final Order (other than as permitted under the DIP
Agreement) without the prior written consent of the DIP Agent, and no such consent shall be
implied by any other action, inaction or acquiescence by the DIP Agent, or (ii) an order
converting or dismissing any of the Cases (other than as permitted under the DIP Agreement).  It

27

shall constitute a termination of the right to use Cash Collateral if there is entered any modification of this Final Order in respect of (i) the provision of Adequate Protection hereunder, (ii) the use of Cash Collateral, or (iii) any of the other benefits, rights or protections of the Prepetition Secured Parties or Prepetition Agent, in each case that is adverse to such parties, without the prior written consent of the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the Prepetition Agent. If an order dismissing any of the Cases of the DIP Obligors under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (A) the Superpriority Claims, the 507(b) Claims, the other administrative expense claims granted pursuant to this Final Order, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and all Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, the 507(b) Claims, the other administrative expense claims granted pursuant to this Final Order, the DIP Liens and the Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest) and (B) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in clause (A) above.

(c)    If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacatur shall not affect (i) the validity, priority or enforceability of any DIP Obligations or the Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition Agent, as applicable, of the effective date of such reversal, stay, modification or vacatur or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens. Notwithstanding

28

any such reversal, stay, modification or vacatur, any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the DIP Obligors to the DIP Agent, the DIP Parties, the Prepetition Agent or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent and the Prepetition Agent of the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Final Order, and the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted in sections 363(m) and 364(e) of the Bankruptcy Code, this Final Order and pursuant to the DIP Documents.

(d)     Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Parties, the Prepetition Agent and the Prepetition Secured Parties granted by this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases of the DIP Obligors to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases of the DIP Obligors or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases of the DIP Obligors and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the DIP Obligors having waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in the Cases of the DIP Obligors, in any successor cases if the Cases of the DIP Obligors cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the DIP Obligations, the Superpriority Claims, the Section 507(b) Claims, the

29

other administrative expense claims granted pursuant to this Final Order, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders granted by this Final Order and the DIP Documents shall continue in full force and effect until all DIP Obligations and all Adequate Protection Obligations are indefeasibly paid in full in cash.

17.    *Effect of Stipulations on Third Parties.*  The stipulations and admissions contained in this Final Order, including without limitation, in paragraph 3 of this Final Order, shall be binding solely upon the Debtors in all circumstances.  The stipulations and admissions contained in this Final Order, including without limitation, in paragraph 3 of this Final Order, shall be binding upon all other parties-in-interest, including without limitation, the Committee (if any), unless (a) any such Committee or any other party-in-interest, in each case, with requisite standing, has duly filed an adversary proceeding (subject to the limitations contained herein, including without limitation, in paragraph 18) by no later than the date that is the earlier of (x) 75 days after the date of entry of the Interim Order, (y) any such later date agreed to in writing by the Prepetition Agent in its sole and absolute discretion and (z) entry of the Confirmation Order (A) challenging the validity, enforceability, priority or extent of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations or (B) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Agent or any of the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Obligations or the Prepetition Collateral and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of

30

the plaintiff sustaining any such challenge or claim in any such duly filed adversary proceeding; provided that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding is duly filed in respect of the Prepetition Obligations, (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases of the DIP Obligors and any subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the Prepetition Obligations, as the case may be, shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3(b), not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Prepetition Obligations, the Prepetition Agent and the Prepetition Secured Parties, as the case may be, and the liens on the Prepetition Collateral granted to secure the Prepetition Obligations shall not be subject to any other or further challenge by the Committee (if any) or any other party-in-interest, and such Committee or party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding is duly filed, the stipulations and admissions contained in paragraph 3 of this Final Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee (if any) and any other party-in-interest, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Committee (if any), standing or authority to pursue any cause of action belonging

31

to the Debtors or their estates, including without limitation, Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Obligations or any liens granted by any Prepetition Obligor to secure any of the foregoing.

18.    *Limitation on Use of DIP Financing and DIP Collateral.*  The Debtors shall use the DIP Financing and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Final Order and the DIP Documents.  Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans or Letters of Credit under the DIP Agreement, DIP Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Prepetition Loan Documents or the liens or claims granted under this Final Order, the DIP Documents or the Prepetition Loan Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Lenders or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Final Order, (d) seek to modify (whether directly or indirectly) by any motion, pleading or otherwise, any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders hereunder or under the DIP Documents (other than as permitted therein) or the Prepetition Loan Documents (that is adverse to the Prepetition Secured Parties or the Prepetition Agent), in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date

32

unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents; provided that, no more than an aggregate of $25,000 of the Prepetition Collateral (including the Cash Collateral), Loans under the DIP Agreement, the DIP Collateral or the Carve Out may be used by the Committee to investigate the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations, or investigate any Claims and Defenses or other causes action against the Prepetition Agent or the Prepetition Secured Parties.

19. *Insurance.* To the extent the Prepetition Agent is listed as loss payee under the Debtors' insurance policies, the DIP Agent is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment in full of the DIP Obligations, and second, to the payment of the Prepetition Obligations.

20. *Final Order Governs.* In the event of any inconsistency or conflict between the provisions of this Final Order, the Interim Order and the DIP Documents, the provisions of this Final Order shall govern.

21. *Binding Effect; Successors And Assigns.* The provisions of this Final Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Parties, the Committee, and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP

022537-0162-13730-Active.11849661.4

Lenders, the Prepetition Agent, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; provided that, except to the extent expressly set forth in this Final Order, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

22.     *Limitation of Liability.* In determining to make any loan under the DIP Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Secured Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute). Furthermore, nothing in this Final Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders any liability for any claims arising from the pre-petition or post-petition activities of any of the Debtors and their affiliates (as defined in Section 101(2) of the Bankruptcy Code).

23.     *Effectiveness.* This Final Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof as of the Petition Date, and there shall be no stay of execution of effectiveness of this Final Order.

24.     *Master Proof of Claim.*

34

(a)     To facilitate the processing of claims, to ease the burden upon this Court and to reduce any unnecessary expense to the Debtors' estates, the Prepetition Agent is authorized (but not required) to file a single master proof of claim on behalf of itself and the Prepetition Secured Lenders on account of their claims arising under the Prepetition Loan Documents and hereunder against all Debtors (the "Master Proof of Claim"), and the Prepetition Agent shall not be required to file a verified statement pursuant to Rule 2019 of the Bankruptcy Rules in any of the Cases.

(b)     Upon filing of the Master Proof of Claim, the Prepetition Agent, each Prepetition Secured Lender and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors arising under the Prepetition Loan Documents and the claims (as defined in section 101 of the Bankruptcy Code) of the Prepetition Agent and each Prepetition Secured Lender (and each of their respective successors and assigns) named in the Master Proof of Claim shall be allowed as if each such entity had filed a separate proof of claim in each of the Cases in the amount set forth in the Master Proof of Claim; provided that the Prepetition Agent may, but shall not be required, to amend the Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

(c)     The provisions set forth in paragraphs (a) and (b) above and the Master Proof of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proof of Claim shall affect the substantive rights of the Debtors, the Committee, the Prepetition Agent, the Prepetition Secured Lenders or any other party in interest or their respective

022537-0162-13730-Active.11849661.4

successors in interest, including without limitation, the right of each Prepetition Secured Lender

(or its successor in interest) to vote separately on any plan of reorganization proposed in the

Cases.

Dated: December 10 , 2009
Wilmington, Delaware

UNITED STATES BANKRUPTCY JUDGE

36