**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

-------------------------------------------------------------x
                       :

**In re**                         :       **Chapter 11**
                       :

**SIMMONS BEDDING COMPANY, *et al.*,**  :      **Case No. 09-14037 (MFW)**
                       :

        **Debtors.**           :       **(Jointly Administered)**
                       :
                       :
-------------------------------------------------------------x

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
(A) APPROVING THE DEBTORS' DISCLOSURE STATEMENT,
VOTING MATERIALS AND PROCEDURES, AND SOLICITATION AND
(B) CONFIRMING THE DEBTORS' JOINT PLAN OF REORGANIZATION**

        WHEREAS Simmons Bedding Company ("SBC") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"),[1] have proposed and filed with the United States Bankruptcy Court for the District of Delaware (the "Court") (A) the Second Amended Joint Plan of Reorganization of Simmons Bedding Company, *Et Al.* Under Chapter 11 of the Bankruptcy Code, dated January 4, 2010 (as amended, the "Plan") (Dkt. No. 179), a copy of which is annexed hereto as Exhibit A, and that certain supplement to the Plan, filed with the Court on December 29, 2009 (as the documents contained therein have been or may be further amended or supplemented, the "Plan Supplement") (Dkt. No. 167) and (B) (i) the disclosure statement for the Plan, dated October 13, 2009, (the "Disclosure Statement") (Dkt. No. 16), and (ii) appropriate ballots for voting on the Plan (the "Ballots"), in the forms attached as Exhibit C to the Debtors' memorandum of

---

[1]    The Debtors in these chapter 11 cases, along with the last four (4) digits of each Debtor's federal tax identification number, are: Simmons Company (6221); Bedding Holdco Incorporated (5929); Simmons Bedding Company ("SBC") (5743); The Simmons Manufacturing Co., LLC (0960); Windsor Bedding Co., LLC (8616); World of Sleep Outlets, LLC (0957); Simmons Contract Sales, LLC (2016); Dreamwell, Ltd. (2419); Simmons Capital Management, LLC (2470); and Simmons Export Co. (1370). Dreamwell, Ltd. and Simmons Capital Management, LLC maintain their respective principal corporate offices at 2215-B Renaissance Drive, Suite 12, Las Vegas, Nevada 89119. Each of the other Debtors maintains its principal corporate office at One Concourse Parkway, Atlanta, Georgia 30328.

law in support of confirmation of the Plan (the "Confirmation Brief"), having been duly transmitted to

holders of Claims in compliance with the procedures (the "Solicitation Procedures") set forth in the

Voting Certification (as defined below); and

WHEREAS the Court entered an order (I) Scheduling a Combined Hearing to Consider

(A) Approval of the Disclosure Statement, (B) Approval of Solicitation Procedures and Form of Ballots,

and (C) Confirmation of the Plan, (II) Establishing an Objection Deadline to Object to the Disclosure

Statement and the Plan, (III) Approving the Form and Manner of Notice Thereof, and (IV) Granting

Related Relief (the "Scheduling Order") (Dkt. No. 14), which, among other things, scheduled the

hearing to approve the Disclosure Statement for January 5, 2010, to be immediately followed by a

hearing to consider confirmation of the Plan (together, the "Confirmation Hearing"); and

WHEREAS due notice of the Confirmation Hearing has been given to holders of Claims

against the Debtors and other parties in interest in compliance with the title 11 of the United States Code

(the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the

Scheduling Order, and the Solicitation Procedures, as established by (i) the Declaration of James

Katchadurian of Epiq Bankruptcy Solutions, LLC ("Epiq"), sworn to and filed with the Court on

November 16, 2009 (the "Voting Certification") (Dkt. No. 32), and (ii) the affidavits of service filed

with the Court, including the Affidavit of Service of Diane Streany, a Senior Case Manager of Epiq

Bankruptcy Solutions, LLC, regarding Summary of the Plan of Reorganization and Notice of (I) Hearing

to Consider (A) Debtors' Compliance with Disclosure Requirements and (B) Confirmation of Plans of

Reorganization and (II) Commencement of Chapter 11 Cases, dated December 1, 2009 (Dkt. No. 103)

(collectively, the "Notice Affidavits"); and

WHEREAS such notice is sufficient under the circumstances and no further notice is

required; and

NOW, THEREFORE, based on the Court's consideration of the entire record of the Reorganization Cases[2] and the Confirmation Hearing, including (A) the Disclosure Statement, the Plan, and the Voting Certification, (B) the Debtors' memorandum of law, dated January 3, 2010, in support of confirmation of the Plan, (C) the Declarations of (i) William S. Creekmuir, dated January 3, 2009, and (ii) Jonathan T. Nash, dated December 30, 2009, each in support of confirmation of the Plan, (collectively, the "Confirmation Declarations"), (D) the Notice Affidavits, and (E) (i) no objections having been filed to the approval of the Disclosure Statement, and (ii) two objections having been filed to confirmation of the Plan by (1) Banc of America Leasing and Capital, LLC (Dkt. No. 153) and (2) the United States, on behalf of its Internal Revenue Service and its Department of Defense (Dkt. No. 155), and all formal and informal objections to the confirmation of the Plan having been resolved or overruled; and on the arguments of counsel and the evidence presented at the Confirmation Hearing; and the Court having found and determined that the Disclosure Statement should be approved and the Plan should be confirmed as reflected by the Court's rulings made herein and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, the Court hereby FINDS, DETERMINES, AND CONCLUDES that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.     Findings and Conclusions. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Plan. The rules of construction in section 102 of the Bankruptcy Code shall apply to this Order.

findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

      B.     <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Court has jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto. The Debtors are eligible debtors under section 109 of the Bankruptcy Code. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are plan proponents in accordance with section 1121(a) of the Bankruptcy Code.

      C.     <u>Chapter 11 Petitions</u>. On November 16, 2009 (the "<u>Commencement Date</u>"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code. No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code. Further, in accordance with an order of this Court dated November 17, 2009 (Dkt. No. 39), the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

      D.     <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Reorganization Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Reorganization Cases.

E.      Burden of Proof.  The Debtors have the burden of proving the elements of

sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  Each

Debtor has met such burden.

F.      Adequacy of Disclosure Statement.  The Disclosure Statement (a) is

accurate and contains sufficient information of a kind necessary to satisfy the disclosure

requirements of all applicable non-bankruptcy law, including the Securities Act of 1933, as

amended (the "Securities Act"), and Section 10(b) of, and Rule 10b-5 promulgated under, the

Securities Exchange Act of 1934, as amended (the "Exchange Act"), (b) contains "adequate

information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the

Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated

therein, and (c) is approved in all respects.

G.      Voting.  As evidenced by the Voting Certification, votes to accept or reject

the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with

the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), and applicable nonbankruptcy law.

H.      Solicitation.  Prior to the Commencement Date, the Plan, the Disclosure

Statement, and the Ballots, and, subsequent to the Commencement Date, notice of the

Confirmation Hearing, were transmitted and served in compliance with the Bankruptcy Rules,

including Bankruptcy Rules 3017 and 3018, the Local Rules, and the Scheduling Order.  The

forms of the Ballots adequately addressed the particular needs of these Reorganization Cases and

were appropriate for holders of SBC Credit Agreement Claims (Class 4A – 4I), SBC Note

Claims (Class 5A – 5H), Holdco Claims (Class 6), and Equity Interests in Bedding Holdco

(Class 9) – the Classes of Claims entitled to vote to accept or reject the Plan. The period during which the Debtors solicited acceptances to accept or reject the Plan was reasonable in the circumstances of these Reorganization Cases and enabled holders to make an informed decision to accept or reject the Plan. The Debtors were not required to solicit votes from the holders of Other Priority Claims (Class 1), IRB Claims (Class 2), Other Secured Claims (Class 3), and General Unsecured Claims (Class 7A -- 7H), as each such class is Unimpaired under the Plan. The Debtors also were not required to solicit votes from the holders of Equity Interests in SBC (Class 8) and Equity Interests in Holdco (Class 10) as these Classes receive no recovery under the Plan and are deemed to reject the Plan. As described in and as evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement, the Ballots, and the notice of the Confirmation Hearing, (all of the foregoing, the "Solicitation") was timely, adequate, and sufficient under the circumstances. The Solicitation of votes to accept or reject the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based on the circumstances of the Reorganization Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any other applicable rules, laws, and regulations. In connection therewith, the Debtors, AOT Bedding Super Holdings, LLC ("New Parent"), and its wholly-owned subsidiary, AOT Bedding Intermediate Holdings, LLC (collectively, the "Purchasers"), and any and all affiliates, members, managers, shareholders, partners, employees, attorneys and advisors of the foregoing are entitled to the protection of section 1125(e) of the Bankruptcy Code.

I.     Notice. As is evidenced by the Voting Certification and the Notice Affidavits, the transmittal and service of the Plan, the Disclosure Statement, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the

Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

J.   Plan Supplement. On December 29, 2009, the Debtors filed the Plan Supplement. All materials included in the Plan Supplement comply with the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and no other or further notice is or shall be required.

K.   Certain Definitions. For the purposes of this Order:

(a)   "Exit Facility" means that certain senior, secured revolving credit facility to be entered into on the Effective Date pursuant to the Exit Facility Loan Documents;

(b)   "Exit Facility Agents" means, collectively, the administrative and other agents under the Exit Facility Agreement, and any successor agents appointed in accordance with such agreement from time to time;

(c)   "Exit Facility Agreement" means that certain credit agreement, dated as of the Effective Date, by and among the Reorganized Debtors, certain other affiliates of the foregoing, the Exit Facility Agents and Exit Facility Lenders, as the same may be amended, modified, supplemented or restated from time to time in accordance with its terms, which credit agreement is more fully described and contemplated by the Exit Facility Commitment Letter;

(d)   "Exit Facility Commitment Letter" means, as amended, modified or supplemented from time to time among its parties, that certain Commitment Letter, dated

October 8, 2009, from Wells Fargo Foothill, LLC to AOT Bedding Intermediate Holdings, LLC and accepted and countersigned by AOT Bedding Intermediate Holdings, LLC;

(e) "Exit Facility Intercreditor Agreement" means that certain intercreditor agreement, dated as of the Effective Date, by and among the Reorganized Debtors, the Exit Facility Agent and the trustee under the New Notes Indenture regarding, among other things, the relative rights and priorities of their respective liens and security interests in the Reorganized Debtors' assets, as more fully described in and contemplated by the Commitment Letter;

(f) "Exit Facility Lenders" means, collectively, the lenders from time to time under the Exit Facility;

(g) "Exit Facility Lender Group" means, collectively, the Exit Facility Agents and Exit Facility Lenders; and

(h) "Exit Facility Loan Documents" means collectively, the Exit Facility Agreement, Exit Facility Intercreditor Agreement, and all security agreements, mortgages, notes, guarantees, pledges, hypothecations, control agreement, collateral access agreement, landlord or bailee waivers, financing statements, other perfection documents, corporate resolutions, certificates, agent letters and all other documents, instruments, agreements and items executed, delivered, referenced or filed under, related to or in connection with the Exit Facility Agreement or any of the other foregoing items related thereto.

## Compliance with the Requirements of Section 1129 of the Bankruptcy Code

L. <u>Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with all applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In addition to Administrative Expense Claims, Compensation and Reimbursement Claims, Priority Tax Claims, and DIP Financing Claims, which need not be classified, Section 3 of the Plan classifies ten Classes of Claims and Equity Interests.  The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests designated by the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests.  The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Sections 3, 4.1, 4.2, 4.3, and 4.7 of the Plan specify that Class 1 (Other Priority Claims), Class 2 (IRB Claims), Class 3 (Other Secured Claims), and Class 7A – 7H (General Unsecured Claims) are not impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Sections 3, 4.4, 4.5, 4.6, 4.8, 4.9, and 4.10 of the Plan designate Class 4A – 4I (SBC Credit Agreement Claims), Class 5A – 5H (SBC Note Claims), Class 6 (Holdco Claims), Class 8 (Equity Interests in SBC), Class 9 (Equity Interests in Bedding Holdco), and Class 10 (Equity Interests in Holdco) as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless

the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including (as more fully described in (x) that certain Plan Sponsor Agreement, dated as of September 24, 2009, by and among the Purchasers, SBC, Bedding Holdco, and each of SBC's direct and indirect subsidiaries (the "Plan Sponsor Agreement") and (y) Section 5 of the Plan) (i) the sale of the New Common Stock to the Purchasers (the "Stock Purchase"), (ii) issuance of the New Notes, (iii) entry into the New ABL Financing, (iv) use of the foregoing funds to make all distributions required by the Prepackaged Plan, including the repayment of any amounts outstanding under the DIP Facility, (v) cancellation of existing securities, (vi) new employment arrangements for senior management, and (vii) any necessary or optional corporate action.

(f)    Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)). The amended and restated certificates of incorporation and other organizational documents of the Reorganized Debtors prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(g)    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). Section 5.10 of the Plan contains provisions with respect to the manner of selection of directors and officers of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(h)     Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)). As permitted by section 1123(b)(1) of the Bankruptcy Code, Section 3 of the Plan designates (i) Class 4A – 4I (SBC Credit Agreement Claims), Class 5A – 5H (SBC Note Claims), Class 6 (Holdco Claims), Class 8 (Equity Interests in SBC), Class 9 (Equity Interests in Bedding Holdco), and Class 10 (Equity Interests in Holdco) as impaired, and (ii) Class 1 (Other Priority Claims), Class 2 (IRB Claims), Class 3 (Other Secured Claims), and Class 7A – 7H (General Unsecured Claims) as unimpaired.

(i)     Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Section 8 of the Plan governs the assumption and rejection of executory contracts and unexpired leases and meets the requirements of section 365(b) of the Bankruptcy Code.

(j)     Additional Plan Provisions (11 U.S.C. § 1123(b)(6)). Each of the provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

(k)     Cure of Defaults (11 U.S.C. § 1123(d)). Section 8.3 of the Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to section 8.2 of the Plan, the Debtors or Reorganized Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within thirty (30) days after the Effective Date, file and serve a pleading (such pleading subject to Purchaser Approval) with the Bankruptcy Court listing the cure amounts of all executory contracts or unexpired leases to be assumed. The parties to such

executory contracts or unexpired leases to be assumed by the Debtors or Reorganized Debtors shall have fifteen (15) days from service to object to the cure amounts listed by the Debtors or Reorganized Debtors. If there are any objections filed, the Bankruptcy Court shall hold a hearing. The Debtors or Reorganized Debtors shall retain their right, with Purchaser Approval, to reject any of their executory contracts or unexpired leases, including contracts or leases that are subject to a dispute concerning amounts necessary to cure any defaults. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

      M.     <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically:

      (a)     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code;

      (b)     The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court; and

      (c)     The Debtors have complied with sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable nonbankruptcy law, the Scheduling Order, and all other applicable law, in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes to accept or reject the Plan.

      N.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan (including the Plan Sponsor Agreement, the Exit Facility Loan Documents and all other documents and agreements necessary to effectuate the Plan) has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. Such good faith is evident from the facts and record of the Reorganization Cases, the

Disclosure Statement, the Confirmation Declarations, and the record of the Confirmation

Hearing and other proceedings held in the Reorganization Cases. The Plan, which was

developed after many months of analysis and negotiations involving numerous proposals,

including proposals solicited by the Debtors from the Purchasers and other potentially interested

parties, was proposed with the legitimate and honest purpose of maximizing the value of the

Debtors' estates and effectuating a successful reorganization of the Debtors. The Plan (including

the Plan Sponsor Agreement and all documents necessary to effectuate the Plan) was developed

and negotiated in good faith and at arms'-length among representatives of the Debtors, certain

holders of the Debtors' secured and unsecured obligations, and the Purchasers and their

affiliates. Further, the Plan's classification, indemnification, exculpation, release, and injunction

provisions have been negotiated in good faith and at arms'-length, are consistent with sections

105, 1122, 1123(b)(6), 1123(b)(3)(A), 1129, and 1142 of the Bankruptcy Code, and are each

necessary for the Debtors' successful reorganization.

        O.    <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.

Any payment made or to be made by the Debtors or by New Parent for services or for costs and

expenses in or in connection with the Reorganization Cases, or in connection with the Plan and

incident to the Reorganization Cases, has been approved by, or is subject to the approval of, the

Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

        P.    <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors

have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of

the persons proposed to serve as the initial directors and officers of each of the Reorganized

Debtors after confirmation of the Plan have been fully disclosed to the extent such information is

available, and the appointment to, or continuance in, such offices of such persons is consistent

with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy.

Q.     No Rate Changes (11 U.S.C. § 1129(a)(6)). After confirmation of the Plan, the Debtors' business will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable to the Reorganization Cases.

R.     Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Confirmation Declarations, the liquidation analysis provided in the Disclosure Statement, and the other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an Impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

S.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1 (Other Priority Claims), Class 2 (IRB Claims), Class 3 (Other Secured Claims), and Class 7A – 7H (General Unsecured Claims) are Classes of Unimpaired Claims that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 4A – 4I (SBC Credit Agreement Claims), Class 5A – 5H (SBC Note Claims), and Class 6 (Holdco Claims) have voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtors. Class 9 (Equity Interests in Bedding Holdco) has voted to accept the Plan. Class 8 (Equity Interests in SBC) and

Class 10 (Equity Interests in Holdco) are Impaired by the Plan and are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. As found and determined in paragraph BB below, pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that Classes 8 and 10 are Impaired and are deemed to have rejected the Plan.

   T. <u>Treatment of Administrative Expense Claims, Compensation and Reimbursement Claims, Priority Tax Claims, and DIP Financing Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Allowed Administrative Expense Claims and Allowed Compensation and Reimbursement Claims pursuant to Sections 2.1 and 2.2 of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. The treatment of DIP Financing Claims pursuant to Section 2.4 of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.

   U. <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10))</u>. Holders of SBC Credit Agreement Claims (Class 4A – 4I), holders of SBC Note Claims (Class 5A – 5H), and holders of Holdco Claims (Class 6) voted to accept the Plan, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

   V. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The information in the Disclosure Statement and the Confirmation Declarations and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that based, in part, on the financial

wherewithal of the Purchasers and the Purchasers' obligations under the Plan, there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and operate their business in the ordinary course and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

W.     Payment of Fees (11 U.S.C. § 1129(a)(12)). The Plan provides that on the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of title 28 of the United States Code, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

X.     Continuation of Retiree Benefits (11 U.S.C § 1129(a)(13)). Section 8.7 of the Plan provides that, except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, all employee compensation and benefit plans of the Debtors, including benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are to be assumed under the Plan. The Debtors maintain a 401(k) plan and three qualified multi-employer pension plans for eligible Employees, specifically (i) the Western Conference of Teamsters Pension Plan, (ii) the Steelworkers Pension Trust, and (iii) the United Furniture Workers Pension Fund A (collectively, the "Pension Plans").[3] The Debtors intend to continue

---

[3] The Debtors' 401(k) plan is described in further detail in the Motion of the Debtors Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing Payment of Wages, Compensation, and Employee Benefits, dated November 16, 2009 (Dkt. No. 8).

the Pension Plans and meet the minimum funding standards. The Debtors' obligations under such plans and programs shall survive confirmation of the Plan, except for any equity incentive plans of Bedding Superholdco Incorporated or any of the Debtors, including but not limited to the Third Amended and Restated Simmons Holdco, Inc. Equity Incentive Plan, and any stock option, restricted stock or other equity agreements and any stock appreciation rights or similar equity incentives or equity-based incentives or other obligations or liabilities the value of which depend on the price of, or distributions paid with respect to, equity securities, shall be cancelled as of the Effective Date and the Debtors shall have no liability or responsibility in respect of such equity interests. Accordingly, the Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

Y.  No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Reorganization Cases.

Z.  Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)). The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Reorganization Cases.

AA.  No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtors are each a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Reorganization Cases.

BB.  Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)). Classes 8 and 10 are deemed to have rejected the Plan. Based on the evidence proffered,

adduced, and presented by the Debtors in the Confirmation Declarations and at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

   CC. <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Plan on any such grounds. Therefore, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

   DD. <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan filed in each of these cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Reorganization Cases.

   EE. <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court in Confirmation Declarations and the record of the Reorganization Cases, the Debtors, the Purchasers, and Exit Facility Lender Group and the lenders under the New Notes Financing, and each of the foregoing parties' respective agents, successors, predecessors, control persons, members, officers, directors, employees and agents and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons, to the extent applicable, (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to

the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Section 10.6 of the Plan.

FF.     <u>Implementation</u>.  All documents necessary to implement the Plan, including those contained in the Plan Supplement and the Exit Facility Loan Documents, and all other relevant and necessary documents have been developed and negotiated in good faith and at arms'-length and shall, on completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

GG.     <u>Injunction, Exculpation, and Releases</u>.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunction, exculpation, and releases set forth in Sections 10.4, 10.5, and 10.6 of the Plan, respectively. Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases and exculpation set forth in Sections 10.4, 10.5, and 10.6 of the Plan, respectively, if, as has been established here based on the record in the Reorganization Cases and the evidence presented in the Confirmation Declarations and at the Confirmation Hearing, such provisions (i) were integral to the Plan Sponsor Agreement and Exit Facility Loan Documents among the various parties in interest and are essential to the formulation and implementation of the Plan, as

provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtors, their estates, and parties in interest.

HH.    Pursuant to section 1123(b)(3) of the Bankruptcy Code, the releases, exculpation, and injunction set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors, the Reorganized Debtors and their estates, creditors, and equity holders.  The releases of non-Debtors under the Plan are fair to holders of Claims and are necessary to the proposed reorganization, thereby satisfying the requirements of *In re Continental Airlines, Inc.,* 203 F.3d 203, 214 (3d Cir. 2000).  Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties receiving such releases.  The Confirmation Declarations and the record of the Confirmation Hearing and these Reorganization Cases are sufficient to support the releases, exculpation, and injunction provided for in Section 10 of the Plan. Accordingly, based on the record of the Reorganization Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented in the Confirmation Declarations and at the Confirmation Hearing, the Court finds that the injunction, exculpation, and releases set forth in Section 10 of the Plan are consistent with the Bankruptcy Code and applicable law.  The failure to implement the injunction, release, and exculpation provisions of the Plan would seriously impair the Debtors' ability to confirm the Plan.

II.    Satisfaction of Confirmation Requirements.  Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

JJ.     Implementation.  All documents necessary to implement the Plan, including those contained in the Plan Supplement, and the Exit Facility Loan Documents, and all other relevant and necessary documents have been negotiated in good faith and at arms'-length and shall, on completion of documentation and execution (including the New Notes Indenture Documents), be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

KK.     Good Faith.  The (i) Debtors, (ii) the lenders, the agent, and the other parties under the DIP Facility, (iii) the lenders under the New Notes Financing, (iv) the Exit Facility Lender Group, (v) the Purchasers, and (vi) all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates, and representatives will be acting in good faith if they proceed to (1) consummate the Plan and the agreements, transactions, and transfers contemplated thereby and (2) take the actions authorized and directed by this Confirmation Order.

LL.     New Notes Financing/Exit Financing.  Upon diligent inquiry, the Debtors have determined that the New Notes Financing and the Exit Facility are the best alternatives available to the Debtors.  The New Notes Financing and the Exit Facility have been negotiated in good faith and on an arms'-length basis, without intent to hinder, delay or defraud any creditor of the Debtors, and each party thereto may rely on the provisions of this Confirmation Order in closing thereon.  The availability of the New Notes Financing and the Exit Facility is necessary to the consummation of the Plan and the operation of the Reorganized Debtors.  The terms and conditions of the New Notes Financing, described in the New Notes Indenture Documents, and the Exit Facility, described in the Commitment Letter, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are

supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtors' estates and their creditors. The execution, delivery, or performance by the Debtors or Reorganized Debtors, as the case may be, of any documents in connection with the New Notes Financing and the Exit Financing, and compliance by the Debtors or Reorganized Debtors, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Plan or this Confirmation Order. The financial accommodations to be extended pursuant to the New Notes Indenture Documents and Exit Facility Loan Documents are being extended in good faith, for legitimate business purposes, are reasonable, and shall not be subject to recharacterization for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any other applicable nonbankruptcy law. The New Notes Indenture Documents and Exit Facility Loan Documents, including the commitment letters delivered in connection therewith, any associated fee letters and any definitive loan documentation, shall constitute legal, valid, binding, and authorized obligations of the Reorganized Debtors enforceable in accordance with their terms, and will not conflict with any federal or state law. On the Effective Date, all of the liens and security interests to be granted in accordance with the New Notes Indenture Documents and the Exit Facility Loan Documents shall be deemed approved, and shall be legal, valid, binding, and enforceable first priority liens on the Reorganized Debtors' assets, but with the relative priorities of the liens securing the New Notes Financing and the Exit Facility being subject to the terms, conditions and provisions of the Exit Facility Intercreditor Agreement. The security interests and liens granted in accordance with the New Notes Indenture Documents and/or the Exit Facility Loan Documents shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the

Bankruptcy Code or any applicable nonbankruptcy law. The Debtors and/or Reorganized Debtors and the persons granted such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order. All fees, costs, and expenses paid or to be paid by the Reorganized Debtors in connection with the New Notes Financing and the Exit Facility are hereby ratified and approved.

MM.    Reliance by Purchasers and Third Parties. The purchase price paid by the Purchaser in connection with the Plan is being funded by direct and indirect equity investments in New Parent. These equity investments are themselves subject to the contribution to New Parent of the equity interests of the parent company of National Bedding Company LLC, the largest manufacturer of bedding under the Serta brand name in North America (the "Serta Business"). As a result of these transactions, which will be simultaneous with and subject to the consummation of the Plan, New Parent will own the current business of the Debtors and the current Serta Business, and intends to capture certain synergies from operations in order to provide an enhanced return to investors. The investors in New Parent and the creditors of the New Parent and its subsidiaries (including the providers of the New Notes Financing and the New ABL Financing to the Reorganized Debtors) would not have agreed to make their investments were it not for the effectiveness of the transactions contemplated by the Plan, and have relied upon the finality of the effectiveness of the Plan in making such investments.

NN.    Successors to the Debtors. The New Parent constitutes a successor to the Debtors under the Plan and, consequently, pursuant to section 1145(a) of the Bankruptcy Code,

section 5 of the Securities Act of 1933 and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security do not apply to the offer or sale of the Class A Units of New Parent pursuant to the Plan.

OO.    Retention of Jurisdiction.  The Court may properly, and on the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Debtors' Reorganization Cases, including the matters set forth in Section 11 of the Plan and section 1142 of the Bankruptcy Code.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1.    Findings of Fact and Conclusions of Law.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.    Notice of the Confirmation Hearing.  Notice of the Confirmation Hearing complied with the terms of the Scheduling Order, was appropriate and satisfactory based on the circumstances of the Reorganization Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.    Solicitation.  The solicitation of votes to accept or reject the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based on the circumstances of the Reorganization Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

4.      Ballots.  The forms of Ballots annexed to the Debtors' Confirmation Brief are in compliance with Bankruptcy Rule 3018(c), as modified, conform to Official Form Number 14, and are approved in all respects.

5.      The Disclosure Statement.  The Disclosure Statement (a) contains accurate and adequate information of a kind generally consistent with the disclosure requirements of applicable non-bankruptcy law, including the Securities Act, the Exchange Act and applicable rules promulgated thereunder, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Purchasers, the Plan, and the transactions contemplated therein, and (c) is approved in all respects.  To the extent that the Debtors' solicitation of acceptances of the Plan or the issuance of the New Securities and Documents is deemed to constitute an offer of new securities, the Debtors and the Purchasers are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under section 4(2) of the Securities Act and Regulation D promulgated thereunder.  Section 4(2) exempts from registration under the Securities Act all "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2).  The Debtors have complied with the requirements of section 4(2) of the Securities Act and Regulation D, as the prepetition Solicitation involved a private offering exempt from the registration requirements of the Securities Act.  Further, the right to elect to purchase Class A Units was only extended to creditors who certified on their Class 6 Ballots that they were Eligible Investors.

6.      Confirmation of the Plan.  The Plan and each of its provisions shall be, and hereby are, approved and confirmed under section 1129 of the Bankruptcy Code.  The documents contained in the Plan Supplement are authorized and approved.  The terms of the

Plan, including the Plan Supplement, are incorporated by reference into, and are an integral part of, this Confirmation Order.

7. <u>Objections Resolved or Overruled</u>. Except as provided herein, all objections, responses to, and statements and comments, if any, in opposition to, the Plan, other than those withdrawn, waived, or settled prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety.

8. <u>General Authorizations</u>. The Plan was approved by each of the boards of directors of the Debtors. Except to the extent provided in the Plan Sponsor Agreement, the DIP Facility or the Exit Facility Loan Documents, pursuant to the appropriate provisions of the General Corporation Law of the State of Delaware, Illinois Business Corporation Act of 1983, and section 1142(b) of the Bankruptcy Code, no additional action of the respective directors or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

9. <u>Binding Effect</u>. On the date of and following entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, the Reorganized Debtors, all holders of Claims against and Equity Interests in the Debtors (irrespective of whether such Claims or Equity Interests are impaired under the Plan or whether the holders of such Claims or Equity Interests have accepted the Plan), any and all non-Debtor parties which are party to executory contracts and unexpired leases with any of the Debtors, any other party in interest in the Reorganization Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

10.     Vesting of Assets. On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' estates shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges, and other interests. The Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided in the Plan.

11.     DIP Financing Claims. On the Effective Date, the Debtors shall pay all Allowed DIP Financing Claims in full in Cash. On payment and satisfaction in full of all Allowed DIP Financing Claims, all Liens and security interests granted to secure such obligations, whether in the Reorganization Cases or otherwise, shall be terminated and of no further force or effect.

12.     Implementation of the Plan. The Debtors and the Reorganized Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement and among or contemplated by the Exit Facility Loan Documents, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan, including all such actions delineated in Section 5 of the Plan. On the Effective Date, the appropriate officers or representatives of the Reorganized Debtors and members of the boards of directors of the same are authorized and empowered to issue, execute, file, and deliver or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, referred to in the Plan, in the name of and on behalf of the Reorganized Debtors.

13.     The Stock Purchase. The Stock Purchase is in the best interests of the Debtors, their estates, and parties in interest. The Reorganized Debtors and the Purchasers are hereby authorized to consummate the Stock Purchase as set forth in the Plan Sponsor Agreement (which was assumed pursuant to this Court's Order, dated December 10, 2009 (Dkt. No. 134) (the "Plan Sponsor Order")) and take any additional action necessary to consummate the Stock Purchase or as otherwise contemplated by the Plan Sponsor Agreement. In addition, on the Effective Date, the Reorganized Debtors may (a) cause the transfer of assets or equity interests between or among the Reorganized Debtors and/or (b) engage in any other transaction in furtherance of the Plan.

14.     Compliance with Section 1123(a)(6) of the Bankruptcy Code. The adoption and filing by Reorganized Debtors of the amended and restated charters is hereby authorized, ratified, and approved.

15.     Subordination. Except as otherwise expressly provided in the Plan, this Confirmation Order, or a separate order of this Court, the classification and manner of satisfying all Claims and Equity Interests under the Plan takes into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Under Section 4.6 of the Plan, the Claims in Class 6 consist of Holdco Note Claims and Holdco Subordinated Guaranty Claims, and pursuant to section 510(a) of the Bankruptcy Code, the contractual subordination of the Holdco Subordinated Guaranty Claims to the Holdco Note Claims shall be enforced and all distributions to which holders of Allowed Holdco Subordinated Guaranty Claims are entitled under this section shall be made pro rata to holders of Allowed Holdco Note Claims.

16. <u>Professional Compensation.</u> Except as provided in the Plan, all entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, (ii) shall be paid in full from the Debtors' or Reorganized Debtors' Cash on hand in such amounts as are allowed by the Bankruptcy Court (A) on the later of (x) the Effective Date, or (y) within five (5) Business Days after the date on which the order approving such Allowed Administrative Expense Claim is entered, or (B) on such other terms as may be mutually agreed on between the holder of such an Allowed Administrative Expense Claim and the Debtors or, on and after the Effective Date, the Reorganized Debtors. The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

Notwithstanding anything to the contrary or any requirements in the preceding paragraph, on the Effective Date, the Reorganized Debtors shall pay the reasonable fees and expenses of the (i) administrative agent under the DIP Facility and the restated Credit and Guaranty Agreement for the SBC Credit Agreement Claims, (ii) the respective Indenture Trustees for the holders of the SBC Note Claims and the Holdco Note Claims, which includes, but is not limited to, the reasonable fees, costs and expenses incurred by counsel to the Indenture Trustees, (iii) counsel to DDJ Capital Management, LLC and its affiliates and accounts and Farallon Capital Management, L.L.C. and its affiliates and accounts, (iv) counsel and financial

advisor to JP Morgan Asset Management, MSD SBI, L.P., and Oaktree Capital Management, L.P. (on behalf of various funds and accounts) and (v) counsel to the directors of the Debtors.

17.     Discharge. As of the Effective Date, pursuant to Section 10.2 of the Plan and except as otherwise provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim against the Debtors or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights and liabilities of any kind, nature or description that arose prior to the Effective Date.  On the Effective Date, all holders of such Claims and Equity Interests shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtors, Reorganized Debtors, or any of their assets or properties, or the terminated Equity Interests based on any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

18.     Further, on the Effective Date, all persons or entities who have held, now hold or may hold Claims against any of the Debtors or Equity Interests and all other parties in interest, along with their respective present and former employees, agents, officers, directors, principals and affiliates, are permanently enjoined from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to such Claim or Equity Interest against the Debtors or the Reorganized Debtors, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors or the Reorganized Debtors with respect to such Claim or Equity Interest, (c) creating, perfecting or enforcing any encumbrance of any kind

against the Debtors or the Reorganized Debtors or against the property or interests in property of the Debtors or the Reorganized Debtors with respect to such Claim or Equity Interest, or (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligations due from Debtors or the Reorganized Debtors, with respect to such Claim or Equity Interest. Such injunction shall extend to any successors of the Debtors and Reorganized Debtors and their respective properties and interest in properties.

19.     Notwithstanding the foregoing, nothing in the Plan, the Confirmation Order, and any implementing Plan documents discharges, releases, precludes, or enjoins (i) any environmental liability to any governmental unit that is not a Claim as such term is defined in section 101 of the Bankruptcy Code or (ii) any environmental Claim of any governmental unit arising on or after the Effective Date. The Debtors and Reorganized Debtors reserve the right to assert that any environmental liability is a Claim that arose on or prior to the Confirmation Date and that such Claim has been discharged and/or released under sections 524 and 1141 of the Bankruptcy Code. In addition, nothing in the Plan discharges, releases, precludes, or enjoins any environmental liability to any governmental unit that any entity would be subject to as the owner or operator of property after the Effective Date.

20.     Further, notwithstanding any provision to the contrary in the Plan, the Confirmation Order, and any implementing Plan documents, nothing shall: (1) affect the ability of the Internal Revenue Service ("IRS") to pursue to the extent allowed by non-bankruptcy law any non-debtors for any liabilities that may be related to any federal tax liabilities owed by the Debtors; and (2) affect the rights of the IRS to assert setoff and recoupment. To the extent the allowed IRS Priority Tax Claims are not paid in full in cash on the Effective Date, payments of the allowed IRS Priority Tax Claims will be paid in equal quarterly installments over a period

not to exceed five years from the petition date and interest shall accrue on such claims from the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622. Moreover, the IRS shall not be bound by the provisions set forth in Section 12.5 of this Plan and the Debtors and the Reorganized Debtors agree that they will comply with the provisions of the Internal Revenue Code.

21.     Notwithstanding any provision to the contrary in the Plan, the Confirmation Order, and any implementing Plan documents:

(a)     nothing shall prevent any exercise of an otherwise valid and enforceable anti-assignment provision or consent right under applicable law in any executory agreement with Oracle USA, Inc. and its affiliates.

(b)     notwithstanding any provision in the Plan, the Order confirming Plan and any implementing Plan documents, the debtors and the Reorganized Debtors shall comply with all applicable bankruptcy law, non-bankruptcy law, federal regulations and statutes with respect to any federal government contract. Moreover, the assumption and assignment of any federal contract shall remain subject to the two following conditions: (1) the United States shall have the right in its sole discretion to withhold its consent to such proposed assumption or assignment of any federal contract to the extent such right may be exercised pursuant to section 365 of the Bankruptcy Code; and (2) assumption and assignment of any federal contract shall be conditioned upon the receipt of all necessary approvals and/or novations of the United States to the extent required under applicable non-bankruptcy law. Without limiting the foregoing, nothing in the Plan, Order confirming Plan or implementing Plan documents shall be interpreted to set cure amounts or to require the government to novate or otherwise consent to the transfer of any federal government contract, agreement or interest. The government's rights to offset or

recoup any amounts due under, or relating to, any contracts, agreements or other interests are expressly preserved.

(c) the Debtors and the Reorganized Debtors shall comply with all applicable bankruptcy law, non-bankruptcy law, federal regulations and statutes with respect to any federal government contract. Moreover, the assumption and assignment of any federal contract shall remain subject to the two following conditions: (1) the United States shall have the right in its sole discretion to withhold its consent to such proposed assumption or assignment of any federal contract, to the extent such rights are exercised pursuant to section 365 of the Bankruptcy Code; and (2) assumption and assignment of any federal contract shall be conditioned upon the receipt of all necessary approvals and/or novations of the United States to the extent required pursuant to section 365 of the Bankruptcy Code. Without limiting the foregoing, nothing in the Plan, this Confirmation Order, or implementing Plan documents shall be interpreted to set cure amounts or to require the government to novate or otherwise consent to the transfer of any federal government contract, agreement or interest. The government's rights to offset or recoup any amounts due under, or relating to, any contracts, agreements or other interests are expressly preserved.]

(d) all unexpired equipment leases and schedules thereto ("Equipment Leases") of Banc of America Leasing and Capital, LLC, f/k/a Fleet Capital Corporation ("BALCAP") shall be assumed as of the Effective Date. For the avoidance of doubt, any pleading filed and served pursuant to Section 8.3 of the Plan shall not purport to reject the Equipment Leases that are or were assumed on the Effective Date by operation of Section 8.2 of the Plan. Further, the Equipment Leases shall not be assigned by the Debtors without providing BALCAP notice and an opportunity to be heard with respect to any such proposed assignment,

and this Confirmation Order shall not be deemed approval of any assignment of the BALCAP Equipment Leases.

22.     The New Notes Financing, the Exit Facility, and the respective terms and provisions of the New Notes Indenture Documents and the Exit Facility Loan Documents are approved. Each of the Debtors and Reorganized Debtors, as the case may be, is authorized to undertake any and all acts and actions required to implement the New Notes Financing, the Exit Facility, and all commitment letters delivered in connection therewith, including without limitation, entering, executing, delivering, filing or recording the New Notes Indenture Documents and the Exit Facility Documents, and no board or shareholder vote shall be required with respect thereto except as expressly contemplated or required by the New Notes Indenture Documents or the Exit Facility Loan Documents. The parties to the New Notes Indenture Documents and the Exit Facility Loan Documents are authorized and empowered to take such steps and to execute such instruments and documents as may be necessary or required to assist in the implementation of all transactions contemplated thereby. The automatic stay imposed pursuant to section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit (without further application to the Court) the execution, delivery, filing and recordation of the New Notes Indenture Documents and the Exit Facility Loan Documents and all transactions contemplated thereby. On the Effective Date, the liens securing the New Notes Financing and Exit Facility shall be legal, valid, binding and enforceable liens, and the New Notes Indenture Documents and the Exit Facility Loan Documents shall constitute the legal, valid and binding obligations of Reorganized Debtors. The obligations of the Debtors and the Reorganized Debtors as the case may be, under the New Notes Indenture Documents and the Exit Facility Loan Documents shall, upon execution, constitute legal, valid, binding and

authorized obligations, enforceable in accordance with their terms and not in contravention of any state or federal law. As of the Effective Date, the liens securing the New Notes Financing and the Exit Facility shall constitute duly perfected first priority liens upon the assets of the Reorganized Debtors (provided that the relative priorities of the liens securing the New Notes Financing and the Exit Facility shall be subject to the terms, conditions and provisions of the Exit Facility Intercreditor Agreement), and shall be deemed to be created, valid and perfected without any requirement of filing or recording of financing statements, mortgages or other evidence of such security interests, liens and mortgages and without any approvals or consents from governmental entities or any other persons and regardless of whether or not there are any errors, deficiencies or omissions in any property descriptions attached to any filing and no further act shall be required for perfection of such liens and security interests. Neither the obligations arising under or in connection with the New Notes Financing or the Exit Facility nor, the respective liens securing the same, shall constitute a preferential transfer or fraudulent conveyance under applicable federal or state laws and will not subject the agents, trustees, lenders, purchasers or assignees thereunder to any liability by reason of incurrence of such obligation or grant of such liens under applicable federal or state laws, including, but not limited to, successor or transferee liability. In the event an order dismissing any of these chapter 11 cases is at any time entered, the liens securing the New Notes Financing and the Exit Facility shall not be affected and shall continue in full force and effect in all respects and shall maintain their priorities and perfected status as provided in the New Notes Indenture Documents and the Exit Facility Loan Documents until all obligations in respect thereof shall have been paid and satisfied in full.

23.    <u>Binding Release and Exculpation Provisions</u>.  All release and exculpation provisions embodied in the Plan, including but not limited to those contained in Sections 10.5 and 10.6 of the Plan, are approved and shall be effective and binding on all persons and entities, to the extent provided therein.

24.    <u>Term of Injunctions or Stays</u>.  Pursuant to Section 10.4 of the Plan, unless otherwise provided, all injunctions or stays arising under or entered during the Reorganization Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.  On the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

25.    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date and thereafter as may be required.

26.    <u>Payment of Commitment Letter and Exit Facility Fees</u>.  To the extent not previously paid, the Debtors and Reorganized Debtors are hereby authorized to pay, as applicable, all fees, charges, and other amounts referred to in the Commitment Letter and Exit Facility Loan Documents as and when due.

27.    <u>Assumption or Rejection of Contracts and Leases</u>.  Pursuant to Section 8.2 of the Prepackaged Plan, except as otherwise provided herein, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the

Prepackaged Plan, as of the Effective Date, each Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, pursuant to section 365 of the Bankruptcy Code, unless such contract or lease (i) previously has been assumed or rejected pursuant to Final Order, (ii) previously expired or terminated by its own terms, (iii) is set forth in a schedule, as an executory contract or unexpired lease to be rejected, filed as part of the Plan Supplement, (iv) is rejected pursuant to the terms of the Plan, (v) is not capable of assumption pursuant to section 365(c) of the Bankruptcy Code, or (vi) is the subject of a separate motion to assume or reject such executory contract or unexpired lease filed by the Debtors with Purchaser Approval under section 365 of the Bankruptcy Code prior to the Confirmation Date. This Order shall constitute an order of the Bankruptcy Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

28.     Notwithstanding any provision of the Plan or this Order, including without limitation section 8.4 of the Plan, any claims for damages for the rejection of an executory contract, or any other claims for damages related to such executory contract, by any claimant located outside of the United States of America, including without limitation any claimant who is entitled to service of any notices or motions in these proceedings for the rejection of an executory contract under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, shall be deemed timely if filed with the Bankruptcy Court and served on counsel for the Debtors and the Reorganized Debtors before the later of: (i) thirty days after the Confirmation Date; or (ii) March 16, 2010.

29.     Any claims for damages for the rejection of an executory contract, or any other claims for damages related to such executory contract, not timely filed pursuant to section

8.4 of the Plan or paragraph 28 of this Confirmation Order, if applicable, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective properties or interests in property, agents, successors, or assigns.

30. With respect to the rejection of any intellectual property license agreement pursuant to paragraph 28 of this Confirmation Order, any election under section 365(n) of the Bankruptcy Code with respect to any such intellectual property license agreement must be filed with the Bankruptcy Court and served on counsel for the Debtors and the Reorganized Debtors before the later of: (i) thirty days after the Confirmation Date; or (ii) March 16, 2010. Any such election must state with particularity what rights, if any, the licensee asserts exist and are retained pursuant to section 365(n) of the Bankruptcy Code.

31. Any election or assertion of rights of any kind under section 365(n) of the Bankruptcy Code not timely filed as set forth in paragraph 30 above shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their respective properties or interests in property, agents, successors, or assigns.

32. Notwithstanding any provision of the Plan or this Order, including without limitation section 8.2 of the Plan and paragraph 27 of this Order, Dreamwell, Ltd. ("Dreamwell") shall, pursuant to sections 365 and 1123(b) of the Bankruptcy Code, be deemed to have assumed as of the date of entry of this Order: (i) that certain New Territory License Agreement dated as of June 30, 1987 by and between Dreamwell (as successor-in-interest to Simmons Company, successor-in-interest to Simmons U.S.A. Corporation) and Simmons South East Asia Private Limited (as successor-in-interest to Simmons Asia Limited), as the same has been amended from time to time; and (ii) that certain Existing Territory License Agreement dated as of June 30, 1987 by and between Dreamwell (as successor-in-interest to Simmons Company, successor-in-interest

to Simmons U.S.A. Corporation) and Simmons Co. Ltd. (as successor-in-interest to SJL Investment Limited), as the same has been amended from time to time.

33.     <u>Dissolution of Simmons Company</u>.  Simmons Company shall be dissolved without the need for further board or shareholder action, and this Confirmation Order shall constitute the plan of distribution as is required under Delaware law.

34.     <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to Section 11 of the Plan and sections 105 and 1142 of the Bankruptcy Code, this Court shall retain exclusive jurisdiction over all matters arising in, arising under, and related to the Reorganization Cases to the fullest extent as is legally permissible; <u>provided, however</u>, that, on and subsequent to the Effective Date, this Court shall not retain jurisdiction over any disputes, rights, claims, interests or controversies under the New Notes Indenture Documents, the Exit Facility Loan Documents and the exercise of the respective rights or remedies of the parties thereunder.

35.     <u>Exemption from Certain Taxes</u>.  Pursuant to section 1146(c) of the Bankruptcy Code, the (i) issuance, transfer, or exchange of notes or equity securities under the Plan, (ii) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, and (iii) the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan will not be subject to any stamp tax, recording tax, personal property transfer tax, real estate transfer tax, sales or use tax, or other similar tax.

36.     <u>Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent</u>.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

37.     Reversal/Stay/Modification/Vacatur of Confirmation Order. If any or all of the provisions of this Confirmation Order or the Plan are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, security interest granted or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the occurrence of such reversal, stay, modification, or vacatur, including, without limitation, (i) the validity of any obligation, indebtedness or liability incurred by the Debtors or the Reorganized Debtors under the New Notes Indenture Documents or the Exit Facility Loan Documents, or (ii) the validity and enforceability of the liens securing the New Notes Financing on the Exit Facility. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the occurrence of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan. Specifically, notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any obligation, indebtedness or liability incurred by the Debtors or the Reorganized Debtors under the New Notes Indenture Documents and the Exit Facility Loan Documents (prior to written notice to the trustee for the New Notes Indenture and the respective Exit Facility Agent of any such reversal, stay, modification or vacatur) shall be governed in all respect by the provisions of this Confirmation Order and the Plan, and the lenders under the New Notes Financing and the Exit Facility Lenders shall be entitled to all of the rights, remedies, privileges and benefits granted herein and pursuant to the New Notes Indenture Documents and the Exit Facility Documents.

38. <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

39. <u>Applicable Nonbankruptcy Law</u>. Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

40. <u>Waiver of Filings</u>. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the United States Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the United States Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

41. <u>Documents and Instruments</u>. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

42. <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any

amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

43.  <u>Notice of Confirmation Order and Occurrence of Effective Date</u>.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order, substantially in the form annexed hereto as <u>Exhibit B</u>, to all parties who hold a Claim or Equity Interest in these cases, including the United States Trustee.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order and the occurrence of the Effective Date.

44.  <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

45.  <u>Inconsistency</u>.  To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

46.  <u>Plan Sponsor Order</u>.  The Plan Sponsor Order shall continue in full force and effect except to the extent expressly modified hereby.

47.     <u>Successor to the Debtors</u>.  New Parent shall be deemed the successor of the Debtors under the Plan pursuant to section of 1145(a) of the Bankruptcy Code.

48.     <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

Dated: _____, 2010
         Wilmington, Delaware

         _____
         UNITED STATES BANKRUPTCY JUDGE